Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/18/2016 09:09 AM CST

In re Interest of Nettie F., a child
under 18 years of age.
State of Nebraska and Maureen K.
Monahan, guardian ad litem, appellees,
v. Rodney P. and Brenda P., on behalf
of Katherine P., appellants.

___ N.W.2d ___

Filed November 18, 2016.    No. S-16-241.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
   not involve a factual dispute is determined by an appellate court as a
   matter of law, which requires the appellate court to reach a conclusion
   independent of the lower court's decision.
2. \_\_\_\_: \_\_\_\_. Before reaching the legal issues presented for review, it is
   the duty of an appellate court to determine whether it has jurisdiction
   over the matter before it.
3. **Juvenile Courts: Legislature: Standing: Appeal and Error.** Neb. Rev.
   Stat. § 43-2,106.01 (Reissue 2016), the juvenile code's appeal statute,
   controls who has the right to appeal from a juvenile court's placement
   order. Under this statute, the Legislature has not authorized an adjudi-
   cated child's sibling to appeal from an adverse placement order.

Appeal from the Separate Juvenile Court of Douglas
County: Patricia A. Lamberty, District Judge, Retired. Appeal
dismissed.

Karen S. Nelson, of Carlson & Burnett, L.L.P., for
appellants.

Ryan M. Hoffman and Mark F. Jacobs, of Anderson,
Bressman & Hoffman, P.C., L.L.O., for appellee Maureen K.
Monahan.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

## NATURE OF CASE

The appellants, Rodney P. and Brenda P., are the adoptive parents of Katherine P., who is an older sibling of Nettie F., the child who is the subject of this juvenile dependency proceeding. Rodney and Brenda filed a complaint to intervene on Katherine's behalf, to seek guardianship or adoption of Nettie. The court originally allowed them to intervene but later vacated that order and limited the foster parents and Katherine's parents to presenting evidence on their own qualifications to be Nettie's adoptive parents. After an evidentiary hearing, it found that Nettie's foster parents and Katherine's parents were equally qualified to be foster parents. But it determined that under Nebraska statutes implementing the federal Fostering Connections to Success and Increasing Adoptions Act of 2008 (FCA),[1] a joint-sibling placement with Katherine's parents would be contrary to Nettie's safety and well-being. It found that disrupting her placement would negatively affect her. Instead, it ordered the Department of Health and Human Services (Department) to make reasonable efforts for continuous and frequent sibling visitation or ongoing interaction.

We conclude that whether an adjudicated child's sibling can appeal from a juvenile court's adverse placement order is governed by Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016), which does not authorize such appeal. Accordingly, we dismiss Rodney and Brenda's appeal brought on Katherine's behalf.

## BACKGROUND

Nettie was born in June 2014. The Department placed her with Greg G. and Laura G. 3 days after her birth. Nettie's

---

[1] See Pub. L. 110-351, 122 Stat. 3949.

biological mother had previously lost her parental rights to her other children because of neglect. Laura testified that they were considered potential adoptive parents from the start and were told they would be able to adopt Nettie. But near the end of June, Rodney and Brenda learned about Nettie's birth from someone they knew at the Department. They had finalized Katherine's adoption about 6 months before Nettie's birth. Katherine was born in 2011 and was about 3 years old during these proceedings. Rodney and Brenda immediately contacted Nettie's case manager to express their interest in visitations, placement, and their eventual adoption of Nettie.

Rodney and Brenda had moved to Illinois after adopting Katherine, but they offered to move back to Nebraska to facilitate Nettie's visitations with them. In September 2014, after Rodney and Brenda had completed a home study in Illinois, they filed a complaint to intervene on Katherine's behalf. In December, the court granted them leave to do so. Later that month, Nettie's parents voluntarily relinquished their parental rights.

In January 2015, the court issued an adjudication order in which it stated that Nettie's permanency objective was adoption and ordered her placement with Greg and Laura to continue. The Department did not schedule any visitations between Katherine, her parents, and Nettie until March 2015, when Nettie was 9 months old. At that time, Rodney and Brenda drove from Illinois for visitations. They stated that Nettie and Katherine interacted well during visitations and that Nettie displayed no concerning behaviors.

In March 2015, Rodney and Brenda moved to change Nettie's placement to their home. They asked the court to make the change quickly to avoid bonding problems as Nettie grew older. Greg and Laura responded with a complaint to intervene based on their status as Nettie's foster parents and preadoptive parents. The court granted them leave to do so. In its order, the court stated that Nettie was thriving with Greg and Laura and ordered a bonding expert to meet with them to

determine whether disrupting her placement with them would be in her best interests.

In October 2015, Rodney and Brenda moved to vacate the March order allowing Greg and Laura to intervene. They argued that this court had recently clarified in *In re Interest of Enyce J. & Eternity M.*[2] that foster parents have a right to participate in review hearings but no right to intervene as a party. On October 26, the guardian ad litem filed motions for the court to vacate its orders allowing the foster parents and Katherine's parents to intervene. She argued that neither couple had standing to intervene. Rodney and Brenda objected that they had standing to intervene on Katherine's behalf under Neb. Rev. Stat. § 43-1311.02 (Reissue 2016).

In November 2015, the court vacated its earlier orders allowing the foster parents and Katherine's parents to intervene. It reasoned that under our case law, Greg and Laura had no statutory right to intervene as parties and that a juvenile court had no authority to permit an equitable intervention. The court also concluded that under our 2011 decision in *In re Interest of Meridian H.*,[3] Rodney and Brenda could not intervene on Katherine's behalf.

In January 2016, the court quashed Rodney and Brenda's subpoenas for two caseworkers, who had been present during their visitations with Nettie, to testify at the final evidentiary hearing on Nettie's placement. At that February hearing, the court overruled their motion to make an offer of proof intended to challenge the validity of a caseworker's opinion. The court stated that the attorneys for the foster parents and Katherine's parents were limited to calling their clients to testify about their own qualifications to be Nettie's adoptive parents, "otherwise neither one of you have standing and are not parties in this case."

---

[2] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[3] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

After the hearing, the court issued an order in which it found that the foster parents and Katherine's parents were equally qualified to be foster parents. But the court found that "it is in [Nettie's] best interests" to be placed with Greg and Laura. Additionally, under § 43-1311.02, the court found that "joint sibling placement would be contrary to the safety and well-being of [Nettie] as she has been placed with [Greg and Laura] since birth and disruption of this placement would have negative effects on Nettie and not be in her best interest[s]." However, the court ordered the Department to "make reasonable effort to provide for continuous and frequent sibling visitation or for ongoing interaction between the siblings, Nettie [and] Katherine."

## ASSIGNMENTS OF ERROR

Rodney and Brenda assign, restated, that the juvenile court erred as follows:

(1) in vacating its order allowing them to intervene on Katherine's behalf;

(2) in not allowing them to make an offer of proof at the February evidentiary hearing on Nettie's placement;

(3) in quashing their subpoenas; and

(4) in violating Katherine's due process right to a fair hearing by not allowing her to subpoena, confront, and cross-examine witnesses.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[4]

## ANALYSIS

[2] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an

---

[4] *In re Interest of Jackson E.*, 293 Neb. 84, 875 N.W.2d 863 (2016).

appellate court to determine whether it has jurisdiction over the matter before it.[5] Thus, before reaching the merits, we must determine whether we have jurisdiction of this appeal.

Rodney and Brenda contend the court erred in relying on *In re Interest of Meridian H.*[6] to vacate the order that allowed them to intervene. There, we concluded that under Nebraska law, an unadjudicated sibling does not have a cognizable interest in a sibling relationship that is separate and distinct from the adjudicated child's interest. We further concluded that the FCA does not establish any legal interest on the part of an unadjudicated sibling which could have been affected by the juvenile court's placement order or serve as the basis for standing. Thus, the siblings could not demonstrate a personal stake in proceeding that would permit an appeal— even if we assumed that a person who demonstrated such an interest could appeal despite the lack of statutory authority for such.

Rodney and Brenda contend that *In re Interest of Meridian H.* has been superseded by the Legislature's 2011 enactment of Neb. Rev. Stat. § 43-1311.01 (Reissue 2016) and § 43-1311.02 and the 2015 amendments to these statutes. These are two of the statutes that the Legislature enacted or amended to comply with the federal FCA. We briefly set out their requirements.

Since 2011, when a child is removed from parental custody or voluntarily placed with the Department, § 43-1311.01 requires the Department to

> identify, locate, and provide written notification of the removal of the child from his or her home, within thirty days after removal, to any noncustodial parent and to all grandparents, adult siblings, adult aunts, adult uncles, adult cousins, and adult relatives suggested by the child or the child's parents, except when that relative's

---

[5] *Id.*

[6] *In re Interest of Meridian H., supra* note 3.

history of family or domestic violence makes notification inappropriate.[7]
In 2015, the Legislature amended § 43-1311.01 to add "all parents who have legal custody of a sibling of the child" as persons who must receive the notification.[8] Among other things, the notice must provide the recipient with an "explanation of the options the relative has under federal, state, and local law to participate in the care and the placement of the child, including any options that may be lost by failing to respond to the notice."[9]

Under § 43-1311.02(1)(a), the Department must make reasonable efforts to place an adjudicated child and a sibling in the same foster care or adoptive placement, even if the siblings' custody orders were entered at separate times, unless such placement is contrary to the safety or well-being of any of the siblings. If the Department does not place the siblings together, § 43-1311.02(1)(b) requires it to provide an explanation to the court and the siblings. Even if a court has terminated parental rights to the siblings, the Department must make reasonable efforts for a joint-sibling placement, or sibling visitation or contact, unless a court has previously suspended or terminated such placement or sibling visitation.[10]

Relying on our decision in *In re Interest of Kayle C. & Kylee C.*,[11] Rodney and Brenda contend that these statutes vest the siblings of an adjudicated child with a legal interest in the subject matter that is sufficient to confer standing to intervene in a dependency proceeding.

---

[7] See 2011 Neb. Laws, L.B. 177, § 6 (codified at § 43-1311.01(1) (Cum. Supp. 2014)).

[8] See 2015 Neb. Laws, L.B. 296, § 1 (codified at § 43-1311.01(1) (Reissue 2016)).

[9] See L.B. 177, L.B. 296, and § 43-1311.01(1)(b).

[10] See § 43-1311.02(5).

[11] *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998).

The guardian ad litem argues that under § 43-1311.02(3), only the "[p]arties to the case" can file a motion for a joint-sibling placement and that an adjudicated child's siblings are not parties to the case under Neb. Rev. Stat. §§ 43-245(19) and 43-247(5) (Reissue 2016). She argues that even though the Department may not have fulfilled its duties in this case, neither § 43-1311.01 or § 43-1311.02 bestow any rights upon a sibling to intervene. Finally, she argues that to interpret these statutes as creating a legal right for siblings to intervene would overburden a foster care system already pressed to its limits.

It is true that in *In re Kayle C. & Kylee C.*,[12] we considered an appeal from grandparents who had been denied leave to intervene in a dependency proceeding involving their grandchildren. But the grandparents in that case appealed directly from the order denying them leave to intervene. We considered their appeal under Neb. Rev. Stat. § 25-328 (Reissue 1995), which we later held serves as a guidepost for deciding whether a person can intervene in a juvenile proceeding.[13] But because the grandparents had timely appealed from the juvenile court's denial of their request to intervene, we had no need to consider whether grandparents can appeal from a juvenile court's adverse placement order. In two more recent cases, however, we have addressed appeal issues in juvenile dependency proceedings that provide guidance here.

First, in *In re Interest of Enyce J. & Eternity M.*,[14] we determined that under statutory changes to Nebraska's Foster Care Review Act, foster parents do not have standing to appeal from an order changing a child's placement. We acknowledged that in 1996, in *In re Interest of Jorius G. & Cheralee*

---

[12] *Id.*

[13] See *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), *disapproved in part, In re Interest of Enyce J. & Eternity M., supra* note 2.

[14] *In re Interest of Enyce J. & Eternity M., supra* note 2.

*G.*,[15] we held foster parents have standing to intervene in a proceeding to consider a proposed placement change. But because the mother had relinquished her child for an adoption by the foster parents, they had a greater interest in a change of placement than foster parents normally have. More important, we pointed out that in 1996, Neb. Rev. Stat. § 43-1314 (Reissue 1993) gave foster parents the right to notice of and participation in court review of a child's placement. In 1998, however, the Legislature amended this statute to provide that the notice requirement "'shall not be construed to require that such foster parent, preadoptive parent, or relative be made a party to the review solely on the basis of such notice and opportunity to be heard.'"[16]

In *In re Interest of Destiny S.*, we held that under this statutory change, "a foster parent does not have an interest in the placement of an adjudicated child sufficient to warrant intervention in juvenile proceedings as a matter of right."[17] That is, a foster parent cannot intervene as a party. A foster parent's right to participate in review proceedings is a "narrow one" that

> does not extend to discovery, questioning, cross-examining, or calling witnesses beyond what is personally applicable to the foster parent's own qualifications. Section 43-1314 gives foster parents a role in the proceeding, but it does not confer on them a right, title, or interest in the subject matter of the controversy.[18]

---

[15] See *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. 892, 546 N.W.2d 796 (1996), *disapproved, In re Interest of Enyce J. & Eternity M., supra* note 2.

[16] *In re Interest of Destiny S., supra* note 13, 263 Neb. at 263, 639 N.W.2d at 407, quoting 1998 Neb. Laws, L.B. 1041.

[17] *Id.* at 263-64, 639 N.W.2d at 407.

[18] *In re Interest of Enyce J. & Eternity M., supra* note 2, 291 Neb. at 972, 870 N.W.2d at 419.

In *In re Interest of Enyce J. & Eternity M.*, we reiterated our holding that foster parents can participate in review hearings under § 43-1314, but that they cannot intervene as a matter of right under § 25-328. A foster parent's "ability to participate under the statute is less than that of a party."[19] We further clarified that a juvenile court is a statutorily created court of limited and special jurisdiction and as a result lacks the authority to permit equitable intervention.

We also extended the same reasoning that precludes foster parents from intervening to hold that they cannot appeal from adverse placement orders. We rejected the argument that foster parents have standing under the doctrine of in loco parentis because they exercise the rights of parents. We explained that foster parents do not have the rights of a parent and that all major, and many minor, decisions for a foster child must be approved by a caseworker from the Department, the child's legal custodian. We concluded that because foster parents do not have an interest akin to that of a parent or the State in a child's placement, they do not have a right or interest that gives them standing to appeal from an order changing a child's placement.

A few months after we decided *In re Interest of Enyce J. & Eternity M.*, we decided *In re Interest of Jackson E.*[20] There, we again held that a child's foster parents, one of whom was the child's maternal grandmother, lacked standing to appeal from a juvenile order that denied their request to have their grandchild returned to their home. The child was placed with the grandmother and her husband for 2½ years while the permanency objective was reunification with the parents. When the Department removed the child and placed him with other foster parents, the grandmother and her husband moved to intervene and requested that the child be returned to them. The juvenile court allowed them to intervene but concluded that

---

[19] *Id.* at 975, 870 N.W.2d at 421.

[20] See *In re Interest of Jackson E., supra* note 4.

the Department had proved changing the permanency objective to adoption and placing him with the new foster parents was in the child's best interests.

On appeal, we stated that under *In re Interest of Enyce J. & Eternity M.*, the foster parents had no right, title, or interest in the proceeding that gave them standing to appeal. We explained that a grandparent has no statutory right to appeal and only a diminished right to participate in juvenile proceedings under *In re Interest of Kayle C. & Kylee C.* We held that the "right of appeal in a juvenile case in this state is purely statutory, and neither foster parents nor grandparents, as such, have a statutory right to appeal from a juvenile court order."[21]

Under § 43-2,106.01(2), an appeal from a juvenile court's final order or judgment may be appealed by the following persons: "(a) The juvenile; (b) The guardian ad litem; [and] (c) The juvenile's parent, custodian, or guardian." We reiterated an older holding that foster parents with temporary placements are not a child's custodians under the appeal statute. Because they did not fall into any category under § 43-2,106.01(2), we held "they have no right to take an appeal in these circumstances."[22]

A court determines standing as it existed when a plaintiff commenced an action.[23] Section 25-328 (Reissue 2016) requires a similar analysis when a nonparty attempts to intervene.[24] As stated, we use § 25-328 as a guidepost for intervention issues in juvenile dependency proceedings.[25] But these decisions clarified that grandparents and foster parents do not

---

[21] *Id.* at 88-89, 875 N.W.2d 867, citing *Huskey v. Huskey*, 289 Neb. 439, 855 N.W.2d 377 (2014).

[22] *Id.* at 90, 875 N.W.2d at 868.

[23] See, e.g., *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016).

[24] See, e.g., *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016).

[25] See *In re Interest of Destiny S., supra* note 13.

have the status of "parties" in a juvenile dependency proceeding even if they have a limited right to participate. So we were implicitly determining whether a nonparty has the right to appeal a juvenile court's adverse placement order.

[3] We have stated that in a proper case, a nonparty may have a sufficient interest in a judgment to appeal, but as a general rule, an appeal is available only to persons who were parties to the case below.[26] Our recent cases have made clear that § 43-2,106.01, the juvenile code's appeal statute, controls who has the right to appeal from a juvenile court's placement order. We need not consider here whether the Legislature's statutory changes were intended to permit an adjudicated child's siblings to intervene in a dependency proceeding, subpoena witnesses, or make offers of proof. Even if that were true, under § 43-2,106.01, the Legislature has not authorized an adjudicated child's sibling to appeal from an adverse placement order.

## CONCLUSION

Consistent with our earlier decisions, we conclude that Rodney and Brenda have no right to appeal the court's order on Katherine's behalf and, as a result, this court has no jurisdiction over their purported appeal. Accordingly, we dismiss their appeal.

APPEAL DISMISSED.

---

[26] See, *Shaffer v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 740, 857 N.W.2d 313 (2014), citing *Rozmus v. Rozmus*, 257 Neb. 142, 595 N.W.2d 893 (1999).