Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/12/2021 09:11 AM CST

Arleene E. Carroll, appellee, v. Gabriel
W. Gould, appellee, and James
Gould, appellant.

___ N.W.2d ___

Filed December 18, 2020.    No. S-20-264.

1.  **Interventions: Judgments: Appeal and Error.** Whether a party has the right to intervene in a proceeding is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
2.  **Interventions: Pleadings.** For purposes of ruling on a motion for leave to intervene, a court must assume that the intervenor's factual allegations set forth in the complaint are true.
3.  **Interventions: Statutes.** Intervention was unknown both at common law and in equity, and is a creature of statute.
4.  ____: ____. The intervention statutes are to be liberally construed.
5.  ____: ____. The right to intervene pursuant to statute is absolute.
6.  **Interventions: Pleadings.** While intervention under Neb. Rev. Stat. § 25-328 (Reissue 2016) is a matter of right, the court may make a preliminary determination whether the complaint in intervention sufficiently alleges the requisite interest.
7.  ____: ____. A court has authority to exclude from the case an intervenor whose pleadings do not disclose a direct interest in the matter in litigation.
8.  **Interventions.** As a prerequisite to intervention, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which the court may render in the action.
9.  ____. An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right.
10. **Interventions: Pleadings.** A prospective intervenor can raise his or her claims or defenses, but those claims or defenses must involve the same core issue as the claims between the existing parties.

11. **Interventions: Pleadings: Standing.** For a court as a preliminary matter to permit intervention as a matter of right, the intervenor must plead some interest in the subject matter of the litigation to give him or her standing in court, describing the ultimate facts evidencing the intervenor's interest in the matter of litigation; otherwise, the intervenor is a mere interloper and wholly incompetent to challenge the contentions of the opposing parties.

12. **Interventions: Pleadings.** Intervention is initially determined on the pleadings by assuming the truth of the allegations therein, and any factual findings relating to those allegations do not occur until a subsequent evidentiary hearing upon a motion for summary judgment or at trial.

13. **Judicial Notice: Pleadings.** While a court may take judicial notice of prior filings that are of public record without converting the matter into an evidentiary hearing on the underlying merits of a pleading, such judicial notice is limited to the fact of the filings' existence as opposed to the truth of the matters contained therein.

14. **Interventions: Pleadings: Standing.** The preliminary determination of standing to intervene is made at the time of the filing of the complaint to intervene.

15. **Parent and Child: Words and Phrases.** A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent.

16. **Parent and Child: Intent: Proof.** The assumption of the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship.

17. **Parent and Child.** In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Reversed and remanded with directions.

Kory L. Quandt, of Anderson, Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellant.

Alan D. Martin for appellee Gabriel W. Gould.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

Freudenberg, J.

## I. NATURE OF CASE

The paternal grandfather appeals from the district court's order denying his intervention, as a person standing in loco parentis, in a custody proceeding brought by the mother against the father. The complaint in intervention alleged that the child, then age 4, had lived in the grandfather's home since her birth until the filing of the complaint to intervene, though the mother and father sometimes resided with the child at the grandfather's home. The district court concluded that any in loco parentis status had been extinguished by virtue of a child support order issued more than a year prior, as well as through temporary custody orders placing the child with a parent, commencing approximately 2 months before the grandfather filed his complaint in intervention and 3 months before the court's ruling denying intervention. The grandfather argues on appeal that the court erred by, among other things, failing to limit its inquiry to the pleadings, assuming that the allegations of the complaint in intervention were true. We reverse, and remand with directions to allow the intervention.

## II. BACKGROUND

The underlying action was commenced on November 25, 2019, when Arleene E. Carroll (Arleene) filed a complaint against Gabriel W. Gould (Gabriel) in the district court for Sarpy County to establish custody and parenting time with respect to their biological child, S.G., born in 2016. The child was born out of wedlock. A prior order was apparently entered on March 22, 2019, in a companion case by the same court, establishing Gabriel's paternity and his child support obligation.

### 1. Arleene's Complaint for Custody

Arleene's complaint alleged that S.G. had lived since birth with Arleene at an address on Leawood Drive in Sarpy County, Nebraska. Arleene alleged that she knew of no person not a party to the action who had physical custody of

S.G. or who claimed to have custody or visitation rights with respect to her.

In her affidavit filed November 26, 2019, and found in the transcript, Arleene asserted that S.G. has resided with Arleene the entirety of her life. While the court at later hearings refers to this affidavit as exhibit 1, it is not in the bill of exceptions.

Arleene alleged further in the affidavit that Gabriel had only infrequent visitations with S.G., only once without her supervision, and had never asked for more visitation. Arleene expressed concern about Gabriel's living situation, drug use, and criminal history. She also described an incident on November 24, 2019, when Gabriel allegedly took S.G. without their mutual agreement and refused to return her unless Arleene took Gabriel to court.

## 2. November 26, 2019, Ex Parte Order
### of Custody to Arleene

Arleene moved for an ex parte order granting her immediate legal and physical custody of S.G. The court granted the requested ex parte order on November 26, 2019, giving law enforcement the power to assist Arleene in retrieving S.G. A hearing was set for December 6. There is no evidence in the record as to whether the November 26 ex parte order was ever carried out, but both Gabriel and the paternal grandfather, James Gould (James), assert on appeal that it was not.

## 3. Gabriel's Response

On December 19, 2019, Gabriel filed a "JURISDICTIONAL CHALLENGE and Objection to Exparte Order." Gabriel claimed that Arleene did not live at the address where she claimed to live and had not, in fact, been S.G.'s primary caretaker. The Leawood Drive home was the residence of James and his wife. Gabriel alleged that Arleene had resided at James' home "briefly" but, in September 2019, moved with her boyfriend to an address in Douglas County.

Gabriel asked for sole legal custody of S.G., an order determining child support, an order of mediation to establish

parenting time, and sanctions against Arleene for "lying to the Court."

Arleene's counsel moved to withdraw.

### 4. December 31, 2019, Temporary
### Continuation of Ex Parte Order

On December 31, 2019, the court ordered the November 26 ex parte order to remain in effect as a temporary order and set the matter for hearing on January 31, 2020, on further temporary allowances. The court also ordered Gabriel and Arleene to participate in mediation.

Arleene's counsel was permitted to withdraw. Gabriel and James both assert on appeal that Arleene never took physical custody pursuant to either temporary order.

### 5. January 31, 2020, Modification
### of Temporary Custody to
### Be With Gabriel

Following a hearing on January 31, 2020, which is not in the record, the court modified the temporary order so that temporary physical custody of S.G. was given to Gabriel subject to Arleene's reasonable rights of parenting time as determined by the parties through mediation. The court ordered that medical costs and child support would remain as previously ordered.

### 6. James' January 31, 2020, Complaint
### to Intervene and Motion
### for Custody

That same date, James filed a complaint to intervene as a third-party plaintiff, claiming in loco parentis status. James asserted that S.G. had resided with him since her birth and that he had at all times assumed the obligations incident to the parental relationship.

James asserted in the complaint that it was his desire and intention to remain in an in loco parentis relationship with S.G. He asserted that he was a fit and proper person to have

S.G.'s temporary and ongoing physical care, custody, and control. James further asserted that it was in S.G.'s best interests to continue to reside with James and to have James maintain an in loco parentis relationship with her.

In a separate motion filed the same day, James sought temporary legal and physical custody of S.G. during the pendency of the underlying proceedings.

Attached to the complaint and the motion were notices that a hearing was set for February 7, 2020.

### 7. Gabriel's Response to James' Complaint and Motion

On February 7, 2020, Gabriel filed a response to James' motions. Gabriel objected to the motion to intervene and any change to the January 31 temporary custody order placing S.G. with Gabriel, though he did not specifically challenge the factual allegations made in the complaint to intervene.

Gabriel also asserted that he did not receive the motions in a timely manner and that an additional evidentiary hearing would be required if the court deemed it necessary to consider them.

### 8. Hearing on Complaint to Intervene

At the February 7, 2020, hearing on the complaint to intervene, the court explained that it was focused on whether to allow James to intervene under in loco parentis. It would disregard James' request for custody or parenting time until the question of intervention was settled.

### (a) James' Affidavit

Over Gabriel's objection, the court allowed James to submit an affidavit, which was entered into evidence as exhibit 2, for the purpose of the motion to intervene. James signed the affidavit, and a notary public also signed the affidavit as having been subscribed and sworn before the notary on February 5, 2020.

In the affidavit, James stated that S.G. had lived in his home since she was born up until Gabriel came to retrieve her on January 31, 2020, pursuant to the court's temporary order of custody.

James had "treated [S.G] as if she were my own daughter." James averred that he had provided all of S.G.'s care, paid for her expenses, and fed and clothed her.

James elaborated that although Gabriel had lived with S.G. at James' home immediately after she was born, Gabriel left when she was 4 months old. Since November 2016, Gabriel "has been absent from [S.G.'s] life," "occasionally" coming around to see her but for no more than a week at a time. Gabriel had "paid no support."

James stated that Gabriel has abused illegal drugs since high school and has "never had consistent living arrangements." James described that in November 2019, Gabriel indicated he wanted to be involved in S.G.'s life, but "he was continually late for visits, distracted on his phone, would leave visits early, or not show up at all."

James described that to his knowledge, Gabriel currently lived with his girlfriend in a room in a basement, which room he presumably was sharing with S.G. He noted that the last time he had visited where Gabriel lived, the home's owner refused to turn on the heat and, as a result, the basement was around 50 degrees. James also expressed concern that Gabriel had "money problems and may not be able to afford the food and care necessary for [S.G.]" Further, Gabriel and his "roommate" work nights, and James did not "know who cares for [S.G.] during the day."

As for Arleene, James averred that she also lived with S.G. at James' home after S.G. was born. But "Arleen[e] has moved away on several occasions, often for many months at a time." According to James, she did so without warning and would leave S.G. and her other children at James' house. James did not otherwise elaborate on how much time Arleene had spent living with S.G. in James' home or when she lived there.

### (b) Gabriel's Affidavit

At the February 7, 2020, hearing, the court granted Gabriel leave to submit his own affidavit by February 11, which the court stated would be received as exhibit 3. The court explained it would disregard any hearsay, but would receive Gabriel's affidavit even if James had an objection to it; the court would receive it "in the same fashion" as it was receiving James' affidavit.

Gabriel filed an affidavit on February 10, 2020. It is contained in the transcript. However, the bill of exceptions does not reflect the receipt of Gabriel's affidavit as an exhibit.

Gabriel averred in his affidavit that at "various times," he had lived with S.G. at the Leawood Drive residence with James. Gabriel explained that this arrangement occurred because Gabriel "thought that it would be in the best interest of my daughter in that I was having difficulties with drugs, and not maintaining regular employment." Gabriel averred that he had been "clean and sober for over seven months." Gabriel attached a negative drug screen.

Gabriel averred that he and his fiance were living at Gabriel's uncle's home, where S.G. had her own room. In a week, he and his fiance would be moving to their own residence, where S.G. would again have her own room.

### (c) February 27, 2020, Order
### Denying Intervention

A pretrial hearing was subsequently held on February 26, 2020. Gabriel and James were represented. Arleene did not appear. The court acknowledged that Gabriel had completed parenting classes and that Arleene had been exercising visitation.

The following day, on February 27, 2020, the court overruled James' motion to intervene. The court found that the allegations in James' petition to intervene were not verified or signed by James and that they lacked "temporal proximity with the current action between [Arleene] and [Gabriel]."

The court acknowledged James' averments in his affidavit entered into evidence as exhibit 2, but found that its prior November 26, 2019, temporary custody order, Gabriel's affidavit, the affidavits provided at the hearings previously held, and the pleadings in this and a companion case all portrayed the matter "in a different light." The court observed that "[a]bsent from these documents is any involvement of [James] to the extent [he] claims."

According to the court, the prior child support order in the companion docket and its prior order placing temporary custody of S.G. with Gabriel combined with James' pleading and affidavit to show that S.G. is no longer in James' care and that thus, any in loco parentis status had been "extinguished."

The court noted that James had not sought visitation pursuant to Neb. Rev. Stat. § 43-1802 (Reissue 2016) and that James could address any concerns for S.G.'s safety through Child Protective Services.

James appeals the February 27, 2020, order.

## III. ASSIGNMENT OF ERROR

James assigns that the district court erred in denying his complaint to intervene.

## IV. STANDARD OF REVIEW

[1] Whether a party has the right to intervene in a proceeding is a question of law.[1] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[2]

[2] For purposes of ruling on a motion for leave to intervene, a court must assume that the intervenor's factual allegations set forth in the complaint are true.[3]

---

[1] *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012).

[2] *Id.*

[3] *Streck, Inc. v. Ryan Family*, 297 Neb. 773, 901 N.W.2d 284 (2017).

## V. ANALYSIS

[3-5] Intervention was unknown both at common law and in equity, and is a creature of statute.[4] The intervention statutes are to be liberally construed.[5] The right to intervene pursuant to statute is absolute.[6]

Under Neb. Rev. Stat. § 25-330 (Reissue 2016), "intervention shall be by complaint," as opposed to through a motion, and is governed by the rules governing pleadings.[7] That statute provides:

> The intervention *shall be by complaint*, which shall set forth the facts on which the intervention rests, and *all the pleadings therein shall be governed by the same rules as other pleadings provided for in Chapter 25.* If such complaint is filed during term, the court shall direct the time in which answers thereto shall be filed.[8]

Neb. Rev. Stat. § 25-328 (Reissue 2016) elaborates that any person who claims an interest in the matter may become a party before trial commences:

> Any person *who has or claims* an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and *before the trial commences*.

---

[4] *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

[5] *Id.*

[6] *Id.*

[7] See *State ex rel. Lanman v. Board of Cty. Commissioners*, 277 Neb. 492, 763 N.W.2d 392 (2009).

[8] § 25-330 (emphasis supplied).

Lastly, under Neb. Rev. Stat. § 25-329 (Reissue 2016), "The court shall determine upon the intervention at the same time that the action is decided, and if the claim of the intervenor is not sustained, the intervenor shall pay all costs of the intervention."

[6,7] We have explained that under this statutory scheme, while intervention under § 25-328 is a matter of right, the court may make a preliminary determination whether the complaint in intervention sufficiently alleges the requisite interest.[9] A court has authority to exclude from the case an intervenor whose pleadings do not disclose a direct interest in the matter in litigation.[10] But a court must assume that the intervenor's factual allegations set forth in the complaint are true.[11]

[8-11] As a prerequisite to intervention, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which the court may render in the action.[12] An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right.[13] A prospective intervenor can raise his or her claims or defenses, but those claims or defenses must involve the same core issue as the claims between the existing parties.[14] Thus, for a court as a preliminary matter to permit intervention as a matter of right, the intervenor must plead some interest in the subject matter of the litigation to give him or her standing in court, describing the ultimate facts evidencing the intervenor's

---

[9] See, *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959); *Drainage District v. Kirkpatrick-Pettis Co.*, 140 Neb. 530, 300 N.W. 582 (1941); John P. Lenich, Nebraska Civil Procedure § 16:8 (2020).

[10] *Kirchner v. Gast, supra* note 9.

[11] See *Streck, Inc. v. Ryan Family, supra* note 3.

[12] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[13] *Id*.

[14] *Streck, Inc. v. Ryan Family, supra* note 3.

interest in the matter of litigation; otherwise, the intervenor is a mere interloper and wholly incompetent to challenge the contentions of the opposing parties.[15]

In *Kirchner v. Gast*, we explained that § 25-329 describes the final determination of the merits on the complaint in intervention and is only applicable after an intervenor has met the requirements of § 25-328 by pleading the required interest in the matter in litigation.[16] Section 25-329 "does not apply to a decision of the preliminary question of the sufficiency of the petition in intervention."

We indicated in *Kirchner* that the proper approach to attack a complaint in intervention is to file a demurrer, which, if sustained, would prevent the intervenor from participating in the trial. Only if the demurrer is overruled will the question of whether the pleadings and proof establish that the party seeking to intervene has an actual interest in the subject of the controversy later be determined, when the action is finally decided.[17]

[12] We no longer have demurrers.[18] The current procedure to challenge a pleading is to file a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) or a motion for judgment on the pleadings under § 6-1112(c). Nevertheless, the fact remains that the statutory scheme requires that intervention initially be determined on the pleadings by assuming the truth of the allegations therein. Any factual findings relating to those allegations do not occur until a subsequent evidentiary hearing upon a motion for summary judgment or at trial.[19] In the event the allegations of the complaint in intervention turn out to be untrue, the intervenor will be taxed the costs of the intervention.

---

[15] See *County of Nance v. Thomas*, 146 Neb. 640, 20 N.W.2d 925 (1945).

[16] See *Kirchner v. Gast, supra* note 9.

[17] *See id.*

[18] See Neb. Rev. Stat. § 25-801.01 (Reissue 2016).

[19] See Lenich, *supra* note 9.

No party moved for summary judgment in this case, and the February 7, 2020, hearing was not, in any event, a proper evidentiary hearing. Gabriel objected that there was inadequate time to respond and prepare for the hearing, and there is little indication the parties understood the February 7 hearing to be their only opportunity to present proof and litigate the merits of James' claim to in loco parentis status. Further, while the district court stated at the hearing that it would allow Gabriel to subsequently file an affidavit, the affidavit was never admitted into evidence, but was merely file stamped with the court. An affidavit filed in the office of the clerk of the district court and made part of the transcript, but which was not marked and received as evidence and is not contained in the bill of exceptions, is not evidence.[20]

Gabriel did not file a motion to dismiss for failure to state a claim under § 6-1112(b)(6) nor a motion for judgment on the pleadings under § 6-1112(c); rather, Gabriel filed a response in which he asserted a generalized objection. Where no motion is filed under § 6-1112, a hearing and ruling on a complaint to intervene is not required any more than it would be for any other complaint, though we have indicated that a court may exercise sua sponte its authority to exclude from the case an intervenor whose pleadings do not disclose a direct interest in the matter in litigation.[21] Here, we will assume that the parties and the court treated Gabriel's objection as a motion to dismiss under § 6-1112(b)(6). But regardless of whether this was a determination on a motion to dismiss or on the court's sua sponte consideration of the complaint in intervention, we agree with James that the district court, rather than making factual findings, should have determined the matter of intervention on the pleadings.

---

[20] See, *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020); *Peterson v. George*, 168 Neb. 571, 96 N.W.2d 627 (1959).

[21] See, *Kirchner v. Gast, supra* note 9; *Drainage District v. Kirkpatrick-Pettis Co., supra* note 9.

[13] We note that while a court may take judicial notice of prior filings that are of public record without converting the matter into an evidentiary hearing on the underlying merits of a pleading,[22] such judicial notice is limited to the fact of the filings' existence as opposed to the truth of the matters contained therein.[23] To the extent the court determined a disputed fact that Arleene had actually taken full custody of the child pursuant to the court's prior orders, not only do the parties agree this did not occur, but doing so was outside the scope of judicial notice in relation to determining upon the pleadings whether to allow intervention.

[14] As for Gabriel's taking custody of the child on January 31, 2020, there is no dispute that the court's January 31 order granting Gabriel temporary custody was carried out. And the complaint to intervene alleges only that James had custody up until January 31. However, the preliminary determination of standing to intervene is made at the time of the filing of the complaint to intervene.[24]

We have never held that in loco parentis status can be involuntarily extinguished from one day to the next, let alone from one hour to the next.[25] Even to the extent the district

---

[22] See, *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017); *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013). See, also, *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *State v. Norwood*, 203 Neb. 201, 277 N.W.2d 709 (1979).

[23] See *Gottsch v. Bank of Stapleton, supra* note 22.

[24] See, *Streck, Inc. v. Ryan Family, supra* note 3; *In re Interest of Nettie F.*, 295 Neb. 117, 887 N.W.2d 45 (2016); *Drainage District v. Kirkpatrick-Pettis Co., supra* note 9. See, also, *Wayne L. Ryan Revocable Trust v. Ryan*, 297 Neb. 761, 901 N.W.2d 671 (2017); *School Dist. of Gering v. Stannard*, 196 Neb. 367, 242 N.W.2d 889 (1976); *Essay v. Essay*, 180 Neb. 47, 141 N.W.2d 436 (1966).

[25] See, *In re Change of Name of Whilde*, 298 Neb. 510, 904 N.W.2d 707 (2017); *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017); *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000); *State on behalf of Lilliana L. v. Hugo C.*, 26 Neb. App. 923, 924 N.W.2d 743 (2019).

court could hypothetically resolve through judicial notice the factual question of in loco parentis status before allowing intervention as a matter of right based on the allegations of the complaint, the order of temporary custody was, for all practical purposes, simultaneous to the complaint to intervene. As such, it did not support the district court's conclusion that the order extinguished any prior in loco parentis status.

[15-17] We determine as a matter of law, based on the allegations of the pleadings, that James has a right to intervene. A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent.[26] The assumption of the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship.[27] In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.[28] James alleged that he had assumed all the obligations incident to S.G.'s care and that it was his intention to have a parent-child relationship with her.

The complaint in intervention alleged sufficient facts to establish James' direct and legal interest in the litigation of such character that he would lose or gain by the direct operation and legal effect of the judgment that the court may render in the action. The district court erred in ruling that James did not stand in loco parentis and in denying the complaint in intervention.

Whether as a matter of fact James stands in loco parentis and whether, if so, that relationship should continue can be determined later, following an appropriate hearing.

---

[26] *Hamilton v. Foster, supra* note 25.

[27] *Id.*

[28] *Id.*

We reverse, and remand with directions for the court to allow the intervention and recognize James as a party to the litigation. In the event the allegations of the complaint are later found to be untrue, it shall tax costs against James pursuant to § 25-329.

## VI. CONCLUSION

For the foregoing reasons, we reverse, and remand with directions.

Reversed and remanded with directions.