IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WILLIAMS V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KATHERINE WILLIAMS, APPELLEE,

V.

KATELYN WILLIAMS, APPELLEE, AND TED HENDERSON, JR., THIRD-PARTY DEFENDANT, APPELLEE, AND MICHAEL WILLIAMS, INTERVENOR-APPELLANT.

Filed March 18, 2025.    No. A-24-383.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Olga M. Benitez Quiñones, of Stange Law Firm, P.C., for appellant.

No brief for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Michael Williams appeals from an order of the district court for Lancaster County which dismissed his complaint requesting custody or visitation with his stepdaughter's minor son, Samuel. On appeal, Michael alleges that the evidence presented at trial demonstrated that he stood in loco parentis to Samuel and that, as such, his relationship with Samuel was in Samuel's best interests and should be maintained by awarding him with specific visitation time. Upon our review, we agree with the district court that Michael did not sufficiently prove that at the time of this action he stood in loco parentis to Samuel. As such, we affirm the district court's decision to dismiss Michael's complaint.

- 1 -

BACKGROUND

At the time of these proceedings, Michael was married to Katherine Williams. Katherine has a daughter, Katelyn, who became Michael's stepdaughter upon his marriage to Katherine. In January 2017, Katelyn gave birth to Samuel. Samuel's biological father is Ted Henderson, Jr.

PROCEDURAL HISTORY

On February 3, 2020, Katherine filed a complaint in the district court seeking grandparent visitation with Samuel. Katelyn was the only named defendant in Katherine's complaint and she was served at an address in New York. Katherine filed an amended complaint in May, again, naming Katelyn as the only defendant. The amended complaint was also served on Katelyn. Ted was not named as a party, and neither complaint was served on him.

According to Michael, at the "beginning of 2020," he initiated a separate action requesting grandparent visitation with Samuel by filing his own complaint, naming Katelyn as the defendant. This complaint is not included in our record, but Michael testified that it was ultimately dismissed by the district court and "when [he] tried to appeal it, that did not go through."

Trial was held on Katherine's amended complaint on July 29, 2020. Apparently, this trial was held simultaneously with the trial on Michael's 2020 complaint for grandparent visitation "using the same testimony to present each case separately." Katelyn did not appear and was not represented at the trial. Ted also did not appear. Katherine and Michael appeared and were witnesses. The testimony generally demonstrated that from Samuel's birth in January 2017 until December 2019, Katherine and Michael had been very involved in his life and had been his primary caretakers for significant periods of time when Katelyn could not or would not provide care. Katherine testified that the child did not live in their home until he was about 11 months old. Katelyn and Samuel again moved out for approximately 2 months when Samuel was 18 months old. When Katelyn and Samuel moved out of Michael and Katherine's home in December 2019, they were not permitted to have any further contact with Samuel. They testified that they were concerned that Katelyn was not providing Samuel with adequate care and had effectively abandoned him. At the close of evidence, Katherine and Michael's counsel argued that they should be awarded primary custody of Samuel.

After the July 2020 trial, the district court filed an order on December 8, 2020, in which it dismissed Katherine's amended complaint without prejudice. We do not have an order in our record which disposed of Michael's complaint. In Katherine's case, the court generally reasoned that it lacked jurisdiction because Ted had not been given notice and an opportunity to be heard. The court noted that there was no dispute that Ted was the adjudicated father of the minor child and that it was also clear that Ted had not been joined as a party and had not been given notice of the action.

Katherine appealed from the district court's dismissal of her amended complaint. Ultimately, the Nebraska Supreme Court held that while it agreed with the district court that as Samuel's father, Ted was an indispensable party in Katherine's action, it disagreed with the court's decision to dismiss the amended complaint instead of ordering Ted to be brought into the action.

*Williams v. Williams*, 311 Neb. 772, 975 N.W.2d 523 (2022). The Supreme Court instructed the district court to, on remand, order Katherine to bring Ted into the action. *Id*.

On remand, the district court entered an order requiring Katherine to join Ted as a party to the action and personally serve him within 6 months. Katherine complied with this order, adding Ted as a third-party defendant.

Also on remand, Michael filed a motion to intervene in the action. The district court granted Michael's motion and on September 2, 2022, Michael filed a complaint for custody and/or grandparent visitation. In the complaint, Michael alleged that he was Samuel's maternal stepgrandparent and that in that role, "he has stood in loco parentis to the minor child . . . provid[ing] a significant amount of care and nurturing for said child, and the minor child has resided with [Michael] for a significant period of his life." He asked to be awarded legal and physical custody of Samuel, or, in the alternative, to be awarded liberal rights of visitation.

Prior to trial being held on Katherine's amended complaint and Michael's complaint for custody and/or grandparent visitation, Katherine dismissed her complaint. As such, the only issues remaining to be decided were whether Michael had standing to raise the question of Samuel's custody or to request visitation and if such standing was shown, whether Michael having custody of or visitation with Samuel was in Samuel's best interests.

TRIAL

Trial was held on Michael's complaint on December 14, 2023. Michael appeared with counsel and testified on his own behalf. In addition, he offered into evidence a transcript from the previous trial held in July 2020. Katherine, Katelyn, and Ted did not appear either in person or through counsel.

Michael testified that he has not seen Samuel since Katelyn moved with him to New York in December 2019, when Samuel was almost 3 years old. By the time of the December 2023 trial, Samuel was almost 7 years old.

Michael indicated that immediately prior to Katelyn and Samuel's move to New York, they resided with him and Katherine. Michael testified that it was he and Katherine who provided Samuel with daily parental care during this time, which included provision of financial support, food, clothing, and transportation to and from daycare. They also bathed Samuel, imposed discipline, scheduled and attended medical appointments, and read to him. To the contrary, during the period Samuel and Katelyn were in their home, Katelyn did not act as a parental figure to Samuel. Michael opined that Katelyn treated Samuel more like a little brother than as her child and that she often acted "burdened" with Samuel. Michael testified that he and Samuel shared a very close bond when they lived together.

Michael requested that the district court award him custody of Samuel. In the alternative, he asked for grandparent visitation to include daily telephone contact, one or two in-person visits per month, and extended summer visitation. Michael admitted that on the morning of trial, Katherine had filed a complaint to dissolve their marriage. He believed the filing was the result of Katelyn threatening Katherine that she would not see Samuel again unless she divorced him.

Following the trial, the district court entered an order on March 11, 2024, dismissing Michael's complaint. After summarizing the evidence presented by Michael at the trial, the court found that Michael "does not possess in loco parentis status, and he is not a grandparent to Samuel; therefore, he has no right to the relief that he requests in his complaint." The district court reasoned,

[B]ased upon the evidence presented, [] Michael and Samuel have [no] bond whatsoever. Michael's own testimony and evidence concedes that he has had no contact with Samuel since he was almost three years of age. Samuel is 7 years old now. Even during the time that Samuel was living with Katherine and Michael, Katelyn was living there as well, and was at least providing some parental support to Samuel by Michael's own admission.

Michael filed a motion to reconsider, which was denied by the district court. Michael now appeals to this court.

## ASSIGNMENT OF ERROR

On appeal, Michael's assignment of error alleges the district court "abused its discretion in denying [his] request for visitation in light of the evidence presented. . . ." In the argument section of his brief, Michael also asserts error to the court's failure to award him custody of Samuel. However, because he did not specifically assign this error, we decline to consider it on appeal. See *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024) (to be considered by appellate court, party asserting alleged error must both specifically assign and specifically argue it in party's initial brief). As such, in our review, we consider only Michael's assertion that he should have been awarded visitation time with Samuel.

## STANDARD OF REVIEW

When a jurisdictional issue does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Peister v. Eurek*, 30 Neb. App. 366, 969 N.W.2d 134 (2021).

## ANALYSIS

### IN LOCO PARENTIS STATUS

In his brief on appeal, Michael asserts that "he acted in loco parentis to his step-grandson Samuel for the first three years of his life" and that, as a result, not only does he have standing to seek visitation of Samuel, but Samuel's best interests require that Michael continue to be in Samuel's life. Brief for appellant at 16. In analyzing Michael's argument, we must determine whether Michael proved that he stands in loco parentis to Samuel, as a party that stands in loco parentis to a minor child has standing to seek custody and visitation regarding that child. See *Peister v. Eurek, supra*. See, also, *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013) (in context of court action in which nonparent seeks custody or visitation with child, in loco parentis is doctrine of standing). Whether a party who commences an action has standing presents a jurisdictional issue. See *Peister v. Eurek, supra*.

Nebraska defines a person standing in loco parentis as "one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption." *Carroll v. Gould*, 308 Neb. 12, 26, 952 N.W.2d 1, 11 (2020). Whether one has assumed the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship. *Id*.

As the definition of in loco parentis suggests, the primary consideration in the analysis is whether the person seeking in loco parentis status has assumed the obligations incident to a parental relationship. *Noland v. Yost*, 315 Neb. 568, 998 N.W.2d 57 (2023). These obligations include providing support for the child and providing day-to-day care for the child. *Id*. When considering the scope of obligations incident to a parental relationship, the Supreme Court has also found guidance in the Parenting Act's definition of "parenting functions." *Id*. In that regard, the Legislature currently defines "parenting functions" to mean "those aspects of the relationship in which a parent or person in the parenting role makes fundamental decisions and performs fundamental functions necessary for the care and development of a child." Neb. Rev. Stat. § 43-2922(17) (Cum. Supp. 2022).

The doctrine of in loco parentis has been described as "a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural or adoptive parent when the evidence shows the nonparent's exercise of such rights is in the child's best interests." *Windham v. Kroll*, 307 Neb. 947, 955, 951 N.W.2d 744, 750 (2020). But case law has also recognized that "in loco parentis status is not equivalent to status as a parent and does not entitle a person to all the same rights that a legal parent would enjoy." *Whilde v. Whilde*, 298 Neb. 473, 486, 904 N.W.2d 695, 704 (2017). Unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). Application of the in loco parentis doctrine depends upon the circumstances in existence when the nonparent claims a child's best interests lie in allowing him or her to exercise parental rights. *Hughes v. Christensen*, 31 Neb. App. 561, 986 N.W.2d 293 (2023). Once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. See *id*.

Here, the district court found that by the time Michael filed his motion for intervention and complaint for custody and/or visitation, he did not possess in loco parentis status over Samuel. We do not find error with the court's finding. The evidence revealed that Michael has not had any contact with Samuel since December 2019, more than 2 years prior to filing his complaint for custody and/or visitation. As such, it is clear that Michael had not been discharging "all duties incident to the parental relationship" since at least December 2019. In addition, it is clear that Michael and Samuel no longer have a strong bond, as years have passed since their last interaction. Accordingly, even if Michael had acted in loco parentis over Samuel prior to December 2019, a fact we need not decide, such status had clearly ceased by the time of the filing of his September 2022 complaint.

We do acknowledge that there was evidence which demonstrated that Michael filed a similar complaint for custody and visitation of Samuel sometime in 2020 in the months following Katelyn and Samuel moving to New York. Michael argues that he has been actively pursuing a continuation of his relationship with Samuel since 2020. While Michael failed to provide us with

a complete record of these prior proceedings, such evidence would not change our ultimate determination that Michael does not currently possess in loco parentis status over Samuel. The law is very clear that such status is temporary in nature and can be terminated if the nonparent no longer discharges all duties incident to the parental relationship. Here, it is clear that at the time of trial, Michael no longer possessed any sort of relationship with Samuel, let alone a relationship which involved Michael providing any level of parental care.

We affirm the decision of the district court which found that Michael no longer possessed in loco parentis status over Samuel. As a result, Michael does not have standing to request visitation with Samuel.

GRANDPARENT VISITATION STATUTE

Much of Michael's argument in his brief to this court relies on the in loco parentis doctrine to assert his right to visitation with Samuel. However, to the extent that he also argues that such visitation is warranted pursuant to Nebraska's grandparent visitation statutes, Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 2016), we agree with the district court that Michael is not a grandparent as defined in those statutes and, as a result, does not have a right to visitation with Samuel pursuant to the statutes.

Section 43-1801 defines a grandparent as "the biological or adoptive parent of a minor child's biological or adoptive parent." By his own admission, Michael is neither a biological nor adoptive parent to Katelyn, Samuel's mother. Instead, he is Katelyn's stepfather. In fact, Michael refers to himself in his complaint for custody and/or visitation as Samuel's "maternal step-grandparent." Because Michael does not meet the definition of grandparent found in § 43-1801, the grandparent visitation statutes cannot serve as the basis for his request for visitation with Samuel.

CONCLUSION

For the reasons set forth above, the order of the district court dismissing Michael's complaint is affirmed.

AFFIRMED.