Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/27/2023 09:04 AM CST

In re Interest of K.C., alleged to be developmentally
disabled and a threat of harm to others.
State of Nebraska, appellee,
v. K.C., appellant.

___ N.W.2d ___

Filed January 27, 2023.    No. S-22-425.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional issue that
   does not involve a factual dispute presents a question of law, which an
   appellate court independently decides.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
   presented for review, it is the duty of an appellate court to determine
   whether it has jurisdiction over the matter before it, and this is so even
   where neither party has raised the issue.
3. **Judgments: Jurisdiction.** When a jurisdictional defect is neither noted
   nor discussed in an opinion, it does not stand for the proposition that no
   defect existed.
4. **Constitutional Law: Jurisdiction: Appeal and Error.** Except in
   those cases wherein original jurisdiction is specifically conferred by
   Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appel-
   late jurisdiction.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court
   to acquire jurisdiction of an appeal, the party must be appealing from a
   final order or a judgment.
6. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a
   judicial tribunal by either acquiescence or consent, nor may subject mat-
   ter jurisdiction be created by waiver, estoppel, consent, or conduct of
   the parties.
7. **Final Orders.** It is not enough that the right itself be substantial; the
   effect of the order on that right must also be substantial.
8. **Judgments: Final Orders: Dismissal and Nonsuit: Appeal and Error.**
   Without a judgment or final order, an appellate court lacks jurisdiction
   and must dismiss the appeal.

Appeal from the District Court for Douglas County: James M. Masteller, Judge. Appeal dismissed.

Thomas C. Riley, Douglas County Public Defender, and Kyle M. Melia for appellant.

Ann C. Miller and Zachary Severson, Deputy Douglas County Attorneys, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

The State of Nebraska filed a petition, pursuant to the Developmental Disabilities Court-Ordered Custody Act (DDCCA),[1] seeking court-ordered custody and treatment for K.C. After the district court made the finding required by statute[2] and ordered an evaluation of K.C. and preparation of a plan, but without ordering involuntary custody and before determining any custody and treatment that might be imposed, K.C. purported to appeal. Because, under the circumstances here, our statute[3] dictates that the order was not final or appealable, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

### Overview of DDCCA

In Nebraska, the DDCCA provides a speedy yet protective procedure for court-ordered custody and treatment for a person with developmental disabilities when he or she poses a threat of harm to others.[4]

---

[1] See Neb. Rev. Stat. §§ 71-1101 to 71-1134 (Reissue 2018).

[2] § 71-1124 ("subject is a person in need of court-ordered custody and treatment").

[3] See Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022).

[4] See § 71-1103.

The Legislature enacted this statutory scheme to protect society when criminal proceedings are not possible.[5] For example, if an individual is charged with a felony, but found incompetent to stand trial due to a developmental disability, the DDCCA applies.[6]

But the Legislature also imposed numerous procedural and substantive safeguards designed to protect the liberty right of a person with developmental disabilities. Particularly important here is the accelerated schedule required between the initial determination of risk and the imposition of any custody and treatment. We summarize the statutory framework.

Under the DDCCA, a civil commitment proceeding ordinarily consists of three parts. First, the State files a petition in the district court, alleging that the individual is a person in need of court-ordered custody and treatment.[7] Next, within 90 days of the petition's filing date, the court holds a "hearing on the petition"[8] (which, for brevity, we call an adjudication) to determine whether such a need exists.[9] If the court finds that the need exists, then the court must order the Nebraska Department of Health and Human Services (DHHS) to submit a plan[10] for the individual's custody and treatment within 30 days.[11] Finally, within 15 days of receiving the plan submitted by DHHS,[12] the court holds a dispositional hearing, and it issues an "order of disposition" placing custody of the subject with DHHS and setting forth a plan for his or her treatment.[13]

---

[5] See Introducer's Statement of Intent, L.B. 206, Judiciary Committee, 99th Leg., 1st Sess. (Jan. 19, 2005).

[6] See *id.*

[7] See § 71-1117.

[8] See § 71-1122.

[9] See §§ 71-1123 and 71-1124.

[10] See § 71-1125.

[11] See § 71-1124.

[12] See *id.*

[13] See § 71-1126.

The duration of the initial custody and treatment cannot exceed 1 year.[14] The DDCCA provides for annual review hearings[15] after the initial order of disposition and contemplates a review hearing "at any time it appears that the subject no longer poses a threat of harm to others."[16]

As relevant to this appeal, the DDCCA provides that the subject of a petition has the right "to appeal a final decision of the court."[17]

## Petition and Initial Proceedings

This appeal originates from proceedings in the district court for Douglas County in that court's case No. CI22-2545. The State filed a petition, pursuant to the DDCCA, in which it alleged that K.C. was a person with a developmental disability who posed a threat of harm to others and was in need of court-ordered custody and treatment. The State filed the petition after the same district court, in its case No. CR20-3738, a felony criminal case, ordered an evaluation of K.C.'s competency to stand trial.

In the DDCCA petition, the State asserted that K.C. suffered from both a mental disease (schizophrenia) and a mental defect (intellectual disability). It then alleged that K.C. was a threat of harm to others due to the criminal charges pending in case No. CR20-3738. The State asserted that the charges arose from a disturbance at a hospital, in which K.C. "kicked and punched" a security officer and "punched [a nurse] in the face, then slapped her." According to the State, K.C. was charged with two counts of assault on an officer, emergency responder, or health care professional, a Class IIIA felony,[18] following the incident. He was incarcerated in the criminal

---

[14] See *id.*

[15] See § 71-1127.

[16] See § 71-1128.

[17] § 71-1118(8).

[18] See Neb. Rev. Stat. § 28-931 (Cum. Supp. 2022).

case, and housed at the Lincoln Regional Center (LRC), pending trial.

The district court held a hearing in both cases. In the DDCCA case, the court recited that the State filed a petition alleging that K.C. was a person with a developmental disability who posed a threat of harm to others and was in need of court-ordered custody and treatment. The court then advised K.C. of his rights under the DDCCA, including his right to a timely hearing on the merits of the petition and to appeal any final decision of the court. Finding that K.C. denied the allegations in the petition, the court ordered DHHS to complete an examination and evaluation of K.C., and scheduled a hearing for adjudication.

Turning to the criminal case, the court held an evidentiary hearing regarding K.C.'s competency to stand trial. It received as evidence a "letter report" authored by a clinical psychologist at LRC, who opined that K.C. was not competent to stand trial and that there was not a substantial likelihood that he would be restored to competency in the foreseeable future. The court stated that it would enter an order regarding K.C.'s competency upon determining the status of the civil commitment proceeding in case No. CI22-2545.

## HEARING ON PETITION

After finding that K.C. was incompetent to stand trial in the criminal case, the district court held the adjudication hearing in the DDCCA case. At the hearing, the State offered the testimony of three witnesses.

The first witness was a police officer who had responded to the incident at the hospital that led to K.C.'s criminal charges for assault. He testified regarding the extent of the victims' injuries and described how those injuries were reportedly inflicted by K.C.

Next, the State called a clinical psychologist at LRC, who had conducted a baseline assessment of K.C. and completed his competency evaluation for the court. She opined that K.C.

was suffering from a combination of active psychosis and a developmental disability, and described various indicators she observed in making that determination.

Finally, the State's third witness was a licensed psychologist with DHHS, who testified that she completed an evaluation of K.C., which she submitted to the court. Based upon her review of K.C.'s records, she opined that K.C. was a person with a "developmental disability"[19] and that he posed a "[t]hreat of harm to others"[20] as defined by the DDCCA.

## District Court's Order

Following the adjudication hearing, the district court issued an order adjudicating K.C. under the DDCCA. In the order, the court specifically made the following findings of fact and conclusions of law:

> 1) Having observed the witnesses and considered their testimony, the [c]ourt credits the testimony of all three witnesses.
>
> 2) The [State] has met its burden of proving by clear and convincing evidence that [K.C.] is a person in need of court-ordered custody and treatment.
>
> 3) [K.C.] is developmentally disabled as defined by Neb. Rev. Stat. § 71-1107 (Reissue 2018).
>
> 4) [K.C.] is a threat of harm to others, i.e., "a significant likelihood of substantial harm to others as evidenced by" . . . "[h]aving inflicted or attempted to inflict serious bodily injury on another." Neb. Rev. Stat. § 71-1115 (Reissue 2018).

The court did not elaborate further on its findings. And, critically, the court's order did not impose any custody or treatment of K.C.

Next, following the procedure and strict time limits set forth in the DDCCA, the court ordered DHHS to evaluate K.C. and

---

[19] § 71-1107.

[20] § 71-1115.

submit a plan for his custody and treatment within 30 days. It also scheduled a dispositional hearing, which would (according to the adjudication order) take place within 15 days after receipt of DHHS' plan.

However, prior to submission of any plan or dispositional hearing, K.C. filed an appeal. It was filed shortly after the entry of the adjudication order. We moved the appeal to our docket.[21]

## ASSIGNMENT OF ERROR

K.C.'s sole assignment of error, as corrected at oral argument, is that "[t]he district court's [final order] is unsupported by evidence which is clear an[d] convincing that [K.C.] was a threat of harm to others and in need of court-ordered treatment."

## STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides.[22]

Because we conclude that this court lacks jurisdiction over the appeal, we do not determine the appropriate standard of appellate review for a final decision under the DDCCA.

## ANALYSIS

[2] We begin by addressing the jurisdictional issue presented by K.C.'s appeal. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue.[23]

[3] As a preliminary matter, we note that the Nebraska appellate courts have had only one occasion to consider the

---

[21] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[22] *Loyd v. Family Dollar Stores of Neb.*, 304 Neb. 883, 937 N.W.2d 487 (2020).

[23] *Kingery Constr. Co. v. 6135 O St. Car Wash*, 312 Neb. 502, 979 N.W.2d 762 (2022).

DDCCA.[24] Our review in that case was limited to the DDCCA's constitutionality—the sole issue raised by that appeal. We recognize that we decided that case without addressing appellate jurisdiction. But that does not relieve us from addressing jurisdiction here. When a jurisdictional defect is neither noted nor discussed in an opinion, it does not stand for the proposition that no defect existed.[25]

In the next section, we recall basic legal principles governing our appellate jurisdiction. We then apply those principles to the facts of this case, which are not disputed.

## Principles of Appellate Jurisdiction

[4,5] Except in those cases wherein original jurisdiction is specifically conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction.[26] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[27]

Under § 25-1902, the four types of final orders which may be reviewed on appeal are (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; (3) an order affecting a substantial right made on summary application in an action after a judgment is entered; and (4) an order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.

---

[24] See *In re Interest of C.R.*, 281 Neb. 75, 793 N.W.2d 330 (2011) (upholding DDCCA as constitutional).

[25] *Tyrrell v. Frakes*, 309 Neb. 85, 958 N.W.2d 673 (2021).

[26] *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022).

[27] *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022).

We read § 71-1118(8) of the DDCCA, which provides that the subject of a petition has the right "to appeal a final decision of the court," as incorporating the rules of appealability in civil matters, including § 25-1902.

### Finality of District Court's Order

[6] As a matter of first impression, this appeal seeks our review of the merits of an order determining that an individual is a person in need of court-ordered custody and treatment under the DDCCA. The parties agree that the district court's order is a final, appealable order because, they assert, it is an order affecting a substantial right made during a special proceeding.[28] But as we have frequently stated, parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.[29] Thus, the parties' agreement is not dispositive.

We turn to our precedent for guidance. The Nebraska appellate courts have previously recognized that a proceeding involving involuntary commitment is a special proceeding for appellate purposes.[30] Assuming without deciding that the district court's order under the DDCCA was made during a special proceeding, we must next determine whether the order affected a substantial right.

In the context of involuntary commitment proceedings, the Nebraska appellate courts' substantial right analysis has long been consistent. We caution, however, that our

---

[28] See § 25-1902(1)(b).

[29] *Florence Lake Investments v. Berg*, 312 Neb. 183, 978 N.W.2d 308 (2022).

[30] See, *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011); *In re Interest of Michael U.*, 273 Neb. 198, 728 N.W.2d 116 (2007); *In re Interest of Saville*, 10 Neb. App. 194, 626 N.W.2d 644 (2001) (citing *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980)). See, also, *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022) (discussing special proceedings).

previous opinions have considered the Nebraska Mental Health Commitment Act[31] and the Sex Offender Commitment Act,[32] which set forth specific appeal statutes that are not contained in the DDCCA.

[7] Jurisdiction in our previous cases has turned on whether the order appealed from deprived the individual of his or her liberty for an indeterminate period of time.[33] In other words, it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[34] With that in mind, we turn to the parties' arguments.

Echoing the language from our previous cases, K.C. asserts that "[t]he district court found in its order that [K.C.] was to be held in custody for an indeterminate period of time during a special proceeding."[35] Similarly, the State asserts that the order "made findings . . . that [K.C.] is to remain

---

[31] See Neb. Rev. Stat. §§ 71-901 to 71-963 (Reissue 2018).

[32] See Neb. Rev. Stat. §§ 71-1201 to 71-1226 (Reissue 2018).

[33] See, *In re Interest of D.I., supra* note 30, 281 Neb. at 924, 799 N.W.2d at 670 (concluding that order affected substantial right because it "deprived [the individual] of his liberty for an indeterminate period of time"); *In re Interest of Michael U., supra* note 30, 273 Neb. at 206, 728 N.W.2d at 122 (explaining that "[l]ike the order of adjudication in *In re Interest of Saville*[, *supra* note 30], the amended order of adjudication in this case ordering that [the individual] be retained for an indeterminate amount of time deprived [the individual] of his liberty and this denial affects a substantial right"); *In re Interest of Saville, supra* note 30, 10 Neb. App. at 198, 626 N.W.2d at 648 (holding that "an order adjudicating an individual to be a mentally ill dangerous person and ordering him retained for an indeterminate amount of time deprives a person of his liberty and that this denial clearly affects a substantial right"). See, also, *State v. Guatney, supra* note 30, 207 Neb. at 508, 299 N.W.2d at 543 (stating that because order denied appellant right to speedy trial and "denied the appellant his liberty for an undetermined time," "[i]t is difficult, if not impossible, to see how that order, therefore, does not affect a substantial right or is not an order from which the appellant should be entitled to appeal").

[34] *Schreiber Bros. Hog Co. v. Schreiber*, 312 Neb. 707, 980 N.W.2d 890 (2022).

[35] Brief for appellant at 10.

in court-ordered custody and treatment for an indeterminate amount of time."[36] The record does not appear to support these assertions.

As noted above, the district court's order did four things. It credited the testimony of the witnesses at the adjudication hearing, it found that K.C. was a person in need of court-ordered custody and treatment, it directed DHHS to evaluate K.C. and submit a plan for his custody and treatment, and it scheduled a dispositional hearing. It did not make findings related to K.C.'s custody. It did not place him into custody or state that he was to be retained in custody, as the parties suggest, for an indeterminate period of time. It did not impose custody for *any* period. Although we agree with K.C. that his liberty constitutes a substantial right,[37] we cannot say that the effect of the district court's order on that right was substantial.

For the sake of completeness, we note that the record does indicate that K.C. was committed to the Douglas County Correctional Center and housed at LRC pending trial in the criminal case. He was not ordered into custody or held in custody in the DDCCA proceeding. Nor does the record suggest, in the DDCCA case, that K.C. had been held in emergency custody[38] or that the State sought emergency custody of K.C. And finally, we note that any future commitment that might be imposed following a dispositional hearing is not before us on appeal and cannot affect a substantial right regarding the order that is before us.

---

[36] Brief for appellee at 13.

[37] See, *In re Interest of D.I., supra* note 30; *In re Interest of Michael U., supra* note 30; *State v. Guatney, supra* note 30; *In re Interest of Saville, supra* note 30. See, also, *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979) (citing *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972); *Humphrey v. Cady*, 405 U.S. 504, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972); *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); and *Specht v. Patterson*, 386 U.S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967)).

[38] See §§ 71-1119 and 71-1120.

[8] For the foregoing reasons, we conclude that the district court's order adjudicating K.C. was not a judgment or final order. Without a judgment or final order, an appellate court lacks jurisdiction and must dismiss the appeal.[39] Therefore, we must dismiss the appeal for lack of jurisdiction.

We emphasize that our characterization of the order before us depends upon the specific facts and procedures employed here. This is not to say that an order under § 71-1124 of the DDCCA can never be a final order. The speedy procedural requirements, faithfully implemented without delay, would generally prevent a substantial effect upon a subject's substantial right to liberty before disposition. But we decline to categorically rule out the possibility of an appeal before disposition.

CONCLUSION

The mere determination that K.C. was a person in need of court-ordered custody and treatment, without further action, did not affect a substantial right. In other words, it did not deprive K.C. of liberty; it merely authorized development of a plan for custody and treatment and scheduled a hearing to determine what custody and treatment should be ordered upon disposition. Therefore, the order before us was not a final, appealable order. Because we conclude that we lack jurisdiction over the appeal, we cannot reach the merits of the adjudication or determine the appropriate standard of appellate review for an adjudication under the DDCCA. We dismiss the appeal for lack of jurisdiction.

Appeal dismissed.

---

[39] See *Shawn E. on behalf of Grace E. v. Diane S.*, 300 Neb. 289, 912 N.W.2d 920 (2018).