Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/15/2023 09:07 AM CST

BRIAN M. NOLAND, APPELLANT,
v. ERIN N. YOST, APPELLEE.

___ N.W.2d ___

Filed December 15, 2023.    No. S-22-254.

1. **Appeal and Error.** When assignments of error are presented in the argument section of an appellate brief, rather than a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief (providing no review at all) or, alternatively, may examine the proceedings for plain error.

2. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

4. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.

8. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

9. **Final Orders: Appeal and Error.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.

10. ____: ____. An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.

11. ____: ____. To be appealable, an interlocutory order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022) and, where applicable, Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).

12. **Parent and Child: Words and Phrases.** A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption.

13. **Parent and Child: Intent: Proof.** The assumption of the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship.

14. **Parent and Child.** The primary consideration in an in loco parentis analysis is whether the person seeking in loco parentis status assumed the obligations incident to a parental relationship. These obligations include providing support for the child and providing day-to-day care for the child.

15. **Parent and Child: Standing: Words and Phrases.** The doctrine of in loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural or adoptive parent when the evidence shows the nonparent's exercise of such rights is in the child's best interests.

16. **Parent and Child.** In loco parentis status is not equivalent to status as a parent and does not entitle a person to all the same rights a legal parent would enjoy.

17. ____. Unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated.

18. ____. Under the common law, the in loco parentis relationship may be abrogated at will either by the party standing in loco parentis or by the child.

19. ____. Once a person alleged to be in loco parentis stops assuming the obligations incident to the parental relationship, the person no longer stands in loco parentis. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.

20. **Parental Rights.** Natural parents have a fundamental right to make decisions concerning the care, custody, and control of their children.

21. **Parent and Child: Child Custody.** When the custody decision of a fit natural parent is subject to judicial review, the court must accord at least some special weight to the parent's own determination.

22. **Constitutional Law: Parental Rights: Child Custody.** Because natural and adoptive parents have a fundamental right to make decisions concerning the care, custody, and control of their minor children, which is constitutionally protected, custody disputes between a natural or adoptive parent and a nonparent are governed by the parental preference doctrine.

23. **Parent and Child: Child Custody: Presumptions: Proof.** The parental preference doctrine establishes a rebuttable presumption that the best interests of a minor child are served by placing custody of the child with his or her parent and, absent proof that a parent is unfit or has forfeited the right to custody, a parent may not ordinarily be deprived of the custody of a minor child. It may be possible to overcome the parental preference doctrine by showing the best interests of the child lie elsewhere, but such circumstances must be exceptional. In order for exceptional circumstances to negate the parental preference doctrine, there must be proof of serious physical or psychological harm to the child or a substantial likelihood of such harm.

24. **Parent and Child: Child Custody.** The parental preference doctrine applies in custody disputes between a natural or adoptive parent and one who stands in loco parentis.

25. **Divorce: Parent and Child.** When a stepparent divorces a child's biological or adoptive parent, he or she is no longer that child's stepparent.

26. **Divorce: Jurisdiction: Visitation: Proof.** In a divorce proceeding, the court has jurisdiction to allow stepparent visitation when the stepparent proves that an in loco parentis relationship was established with a stepchild during the marriage and visitation is in the child's best interests.

27. **Parent and Child.** It is a stepparent's desire to remain in an in loco parentis relationship with his or her spouse's child that gives rise to the rights and corresponding responsibilities usually reserved for natural or adoptive parents.

28. ____. Parental preference principles do not insulate parental decisions from judicial review.

29. **Parental Rights.** A biological parent's rights do not extend to erasing an in loco parentis relationship the parent fostered between his or her minor child and a former partner.

30. **Parent and Child: Standing: Presumptions: Proof.** It is presumed that a child's best interests are served by maintaining the family's privacy and autonomy, but that presumption must give way where the child has established strong psychological bonds with a person who,

although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eyes a stature like that of a parent. Where such a relationship is shown, the child's best interests require that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objection.

31. **Parental Rights.** Parental preference principles do not give natural parents an absolute right to terminate, at will, an established in loco parentis relationship.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Reversed and remanded for further proceedings.

Ashley L. Albertsen, of Oestmann & Albertsen Law, P.C., L.L.O., for appellant.

No appearance by appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

In this marital dissolution, the husband sought a judicial determination that he stood in loco parentis to his wife's biological child so that he could litigate issues of custody and parenting time with his stepchild pursuant to *Hickenbottom v. Hickenbottom*.[1] In that case, we held that a dissolution court has jurisdiction to allow stepparent visitation when an in loco parentis relationship was established during the marriage and visitation with the stepparent is in the child's best interests.

After holding an evidentiary hearing, the district court entered an order finding that although the husband had established an in loco parentis relationship with his stepchild during the marriage, he could not litigate issues of custody or

---

[1] *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991), *disapproved on other grounds, Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016).

parenting time in the divorce because the wife had effectively terminated the in loco parentis relationship by cutting off contact between the child and the husband once the divorce was filed. The court reasoned that the wife, as a fit natural parent, had an absolute right based on parental preference principles to unilaterally terminate the in loco parentis relationship involving her child, and the court believed it was "without power to infringe on a biological parent's constitutional right to raise his/her own child nor overcome the constitutional presumption that a fit parent acts in the best interest of his/her child."

The husband filed this interlocutory appeal to challenge the district court's order and, in particular, its legal conclusion that fit natural parents have an absolute right to unilaterally terminate an established in loco parentis relationship between their child and a stepparent.

For reasons we will explain, we conclude the husband has appealed from a final order under Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2022). And although his appellate brief does not have a separate assignments of error section, we exercise our discretion to review the district court's order for plain error.[2] We ultimately find plain error, and we therefore reverse the order and remand the cause for further proceedings.

## I. BACKGROUND

Erin N. Yost and Brian M. Noland were married in 2016. No children were born during their marriage, but Yost and Noland both had children from prior relationships. Yost's youngest daughter, A.B., is the only minor child at issue in this divorce. She was approximately 2 years old when the parties married, and she lived exclusively with Yost and Noland during the marriage. It is undisputed that during the marriage, the parties told A.B. that Noland was her father, and she considered him to be her father.

---

[2] See Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2022).

## 1. Complaint for Dissolution

In September 2021, Noland filed a complaint seeking to dissolve his marriage to Yost. As relevant to the instant appeal, the complaint alleged that Noland stood in loco parentis to A.B. and that he had, since 2015, assumed all obligations incident to a parental relationship. The complaint further alleged that A.B. "recognizes [Noland] as her father and does not know her biological father." In addition to requesting an equitable division of the marital estate, Noland's complaint requested that he be granted rights of custody, support, and parenting time with A.B.

Around the time Noland filed the dissolution, Yost unilaterally cut off all contact between A.B. and Noland, and Yost informed A.B. that Noland was not her biological father. Yost eventually moved with A.B. out of the marital home and has, since that time, refused Noland's repeated requests for communication or parenting time with A.B.

## 2. Motions Seeking In Loco
### Parentis Determination

A few weeks after he filed the dissolution, Noland filed a motion asking the court to determine that he stood in loco parentis to A.B. so he could pursue temporary orders relating to custody, support, and parenting time with his stepdaughter. In response, Yost filed a motion opposing any determination that Noland stood in loco parentis to A.B., but her motion requested temporary child support from Noland in the event the court determined he stood in loco parentis. Yost also requested appointment of a guardian ad litem for A.B. on the issue of custody.

A hearing was set on these competing motions, but it was continued multiple times for reasons that are not pertinent to the issue on appeal. Eventually, Noland filed a motion seeking an expedited evidentiary hearing to determine his in loco parentis status. In support, Noland asserted that Yost had not been allowing him to have contact with A.B. during the

pendency of the dissolution and that temporary orders were necessary to "maintain the parent/child bond" that had been established during the marriage. Noland expressed concern that if the issue of in loco parentis was not determined on an expedited basis, A.B. could "lose an in loco parentis parent just by [the] passage of time." The district court agreed that time was of the essence due to the transient nature of the in loco parentis relationship, and the matter was set for an expedited evidentiary hearing.

### 3. Evidentiary Hearing and District Court Order

The court expressly limited the evidentiary hearing to determining whether A.B. and Noland had established an in loco parentis relationship during the marriage and, if so, whether that relationship had been terminated postseparation. The court received multiple exhibits and heard testimony from 13 witnesses, including Yost and Noland. A.B. did not testify at the hearing, and nothing in the appellate record indicates a guardian ad litem was appointed for A.B., who was 9 years old and in the third grade at the time of the hearing.

In an order entered March 17, 2022, the district court expressly found that Noland had established an in loco parentis relationship with A.B. during the parties' marriage. In support of that finding, the court pointed to evidence that A.B. lived exclusively with Yost and Noland during the marriage, that A.B. was told Noland was her biological father and believed it, that Yost gave Noland "full access and authority to act on behalf of the minor child" during the marriage, and that Noland had assumed the obligations incident to a parental relationship. The court also found it significant that the parties had initiated stepparent adoption proceedings involving A.B. within the prior year.

But after expressly finding that an in loco parentis relationship had been established during the marriage, the district court went on to find the relationship had been terminated

by Yost postseparation. The court reasoned that Yost had a constitutionally protected right, as A.B.'s natural parent, to raise her child as she deemed appropriate, and thus had the right to unilaterally terminate the in loco parentis relationship between A.B. and Noland. The court found the evidence was undisputed that when the dissolution was commenced, Yost severed all contact and interaction between A.B. and Noland. The court described Yost's conduct in that regard as "less than savory and her credibility on many issues is nonexistent," but it found no evidence that this conduct rendered her unfit. The court ultimately concluded that Yost

> acted completely within her rights to take action to terminate the in loco parentis status. . . . . Therefore, the Court concludes that a change in status, however unartfully accomplished, had occurred. Specifically, [Yost] exercised her parental rights and terminated [Noland's] in loco parentis status . . . . [T]he Court is without power to infringe on a biological parent's constitutional right to raise his/her own child nor overcome the constitutional presumption that a fit parent acts in the best interest of his/her child in this circumstance.
>
> IT IS THERFORE ORDERED, ADJUDGED, AND DECREED that [Noland] does not stand in loco parentis to the minor child at issue in this proceeding.

Presumably because the district court believed it was "without power to infringe" on Yost's desire to terminate the in loco parentis relationship, the court did not address whether A.B. wanted to continue the in loco parentis relationship postdivorce or whether it would be in A.B.'s best interests to do so.

Noland appeals from this order. He argues the district court erred in applying parental preference principles to give Yost an absolute right to unilaterally terminate the established in loco parentis relationship between A.B. and Noland, and he contends this misapplication of Nebraska law prevented him from litigating issues of custody and parenting time in this

divorce under *Hickenbottom*. Noland argues we have jurisdiction over this interlocutory appeal pursuant to § 25-1902(1)(b) because the order was made in a special proceeding and affected a substantial right. Yost did not file a brief on appeal and is in default.

We moved the appeal to our docket on our own motion to address the district court's legal conclusion that parental preference principles give fit biological parents an absolute right to unilaterally terminate an in loco parentis relationship established between their child and a stepparent.

## II. ASSIGNMENTS OF ERROR

Noland's brief does not contain a separate assignments of error section and instead uses the subheadings in the argument section of the brief to assert error by the trial court. Nebraska's appellate court rules require that an appellant's brief shall include, under the appropriate heading, a "separate, concise statement of each error a party contends was made by the trial court" and that "[e]ach assignment of error shall be separately numbered and paragraphed."[3]

[1] We have consistently said that when assignments of error are presented in the argument section of an appellate brief, rather than a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief (providing no review at all) or, alternatively, may examine the proceedings for plain error.[4] In this appeal, we exercise our discretion to examine the district court's order for plain error.

---

[3] *Id*.

[4] See, *County of Lancaster v. County of Custer*, 313 Neb. 622, 985 N.W.2d 612 (2023); *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022). Accord Neb. Rev. Stat. § 25-1919 (Reissue 2016) ("Court of Appeals or Supreme Court may at its option consider a plain error not specified in appellant's brief").

## III. STANDARD OF REVIEW

[2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[5]

[3] An appellate court independently reviews questions of law decided by a lower court.[6]

[4] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[7]

## IV. ANALYSIS

### 1. Finality of District Court Order

[5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[8] Noland filed this interlocutory appeal to challenge the March 2022 order concluding that he could not litigate issues of custody or parenting time with A.B. in this dissolution, because Yost had unilaterally terminated the in loco parentis relationship. In his brief, Noland argues this was a final order under § 25-1902(1)(b) because it was entered in a special proceeding and it affects a substantial right.

This court has characterized marital dissolution as a special proceeding[9] and has consistently described child custody

---

[5] *In re Guardianship & Conservatorship of Maronica B.*, 314 Neb. 597, 992 N.W.2d 457 (2023).

[6] *Haynes v. Nebraska Dept. of Corr. Servs.*, 314 Neb. 771, 993 N.W.2d 97 (2023).

[7] *County of Lancaster, supra* note 4.

[8] *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023).

[9] See *Ropken v. Ropken*, 169 Neb. 352, 356, 99 N.W.2d 480, 484 (1959) ("[a]lthough a divorce action is tried as in equity, it is a special proceeding provided by statute"). Accord *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991) (including divorce in listing of special proceedings), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

determinations as special proceedings.[10] We are aware that a legal treatise has questioned whether dissolutions should be characterized as special proceedings,[11] but no one challenges that characterization here, and we are not inclined to reexamine our precedent on special proceedings in an appeal we are reviewing only for plain error. Because the dissolution court's March 2022 order was entered in a special proceeding, the jurisdictional question here turns on whether the order affected a substantial right.

[6-9] A "substantial right" is an essential legal right, not a mere technical right.[12] A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.[13] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[14] Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.[15]

[10] Most fundamentally, an order affects a substantial right when the right would be significantly undermined or

[10] See, e.g., *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020); *Huskey v. Huskey*, 289 Neb. 439, 855 N.W.2d 377 (2014); *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013); *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009); *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 980, 510 N.W.2d 294, 299 (1994) ("custody determinations . . . are considered special proceedings"), *overruled on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999).

[11] See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239, 280 n.180 (2001).

[12] *In re Interest of Manuel C. & Mateo S.*, 314 Neb. 91, 988 N.W.2d 520 (2023), *modified on denial of rehearing* 314 Neb. 580, 991 N.W.2d 305.

[13] *Id.*

[14] *In re Interest of K.C.*, 313 Neb. 385, 984 N.W.2d 277 (2023).

[15] *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022).

irrevocably lost by postponing appellate review.[16] In the context of dissolution proceedings, we have recognized:

> Generally, when multiple issues are presented to the district court for simultaneous disposition . . . the court's determination of fewer than all the issues presented is not a final order for the purpose of an appeal. This is because, absent unusual circumstances, postponing appellate review until all the issues presented . . . have been decided will not significantly undermine the rights affected by the order.[17]

Similarly, we have held that dissolution orders denying temporary relief do not constitute final orders for purposes of § 25-1902, regardless of "the importance of the rights affected."[18]

But we see nothing temporary about the district court's March 2022 order. To the contrary, the order conclusively determined that although Noland established an in loco parentis relationship with A.B. during the marriage, Yost unilaterally terminated that relationship postseparation and, as a result, Noland no longer stood in loco parentis to A.B. and could not litigate issues of custody or parenting time in the divorce. As discussed in more detail later in our opinion, we held in *Hickenbottom*[19] that when a stepparent shows that he or she established an in loco parentis relationship with a stepchild while married to the stepchild's natural parent, the stepparent may pursue visitation with the stepchild in a subsequent divorce and the court has jurisdiction to award visitation, even over the natural parent's objection, when it is shown to be in the best interests of the child.[20]

---

[16] *Paxton v. Paxton*, 314 Neb. 197, 989 N.W.2d 420 (2023).

[17] *Tilson v. Tilson*, 299 Neb. 64, 71-72, 907 N.W.2d 31, 37 (2018).

[18] *Id.* at 74, 907 N.W.2d at 38.

[19] *Hickenbottom, supra* note 1.

[20] Accord *Cavanaugh v. deBaudiniere*, 1 Neb. App. 204, 493 N.W.2d 197 (1992).

Here, the March 2022 order permanently denied Nolan the opportunity to litigate issues of custody and visitation with A.B. in this divorce, and it thus affected with finality the stepparent rights this court recognized in *Hickenbottom.* Given the transitory nature of the in loco parentis relationship,[21] and the fact that the court's order did not purport to leave any aspect of the in loco parentis determination for a later trial on the merits, we think this case presents an example of the exceedingly "unusual circumstance[]"[22] where postponing appellate review would result in significantly undermining or irrevocably losing the in loco parentis rights affected by the order. We therefore conclude the March 2022 order was a final, appealable order under § 25-1902(1)(b).

[11] We must also consider whether Neb. Rev. Stat. § 25-1315 (Reissue 2016) is implicated on these facts, because it is a well-settled principle that "to be appealable, an order must satisfy the final order requirements of § 25-1902 and, where implicated, § 25-1315(1)."[23] In *Mann v. Mann,*[24] we explained:

> By its terms, § 25-1315(1) is implicated only when a case presents more than one claim for relief or involves multiple parties, and the court enters an order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. For purposes of determining whether a case presents more than one "claim for relief" under § 25-1315(1), we have said the term is not synonymous with "issue" or "theory of

---

[21] See, *Jennifer T. v. Lindsay P.*, 298 Neb. 800, 807, 906 N.W.2d 49, 57-58 (2018) (explaining that in loco parentis status is, unlike biological and adoptive parentage, "'transitory'"); *Whilde v. Whilde*, 298 Neb. 473, 486, 904 N.W.2d 695, 704 (2017) (reasoning that "'unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated'").

[22] *Tilson, supra* note 17, 299 Neb. at 72, 907 N.W.2d at 37.

[23] *Mann v. Mann*, 312 Neb. 275, 288, 978 N.W.2d 606, 616 (2022).

[24] *Id*. at 286, 978 N.W.2d at 615.

recovery," but is instead the equivalent of a "cause of action." Because of this construction, our cases sometimes use the phrases "claim for relief" and "cause of action" interchangeably when analyzing whether § 25-1315 is implicated.

*Mann* was a dissolution modification case, and it involved multiple claims for relief because the complaint and counterclaim to modify the decree was joined with a counterclaim for declaratory judgment.[25] In contrast, this dissolution involves multiple issues, but it presents just one claim for relief.[26] As such, § 25-1315 is not implicated here. We have jurisdiction over this appeal.

## 2. Plain Error Review

We turn now to the primary issue on appeal: whether the district court plainly erred in concluding that parental preference principles give natural parents an absolute right to unilaterally terminate an established in loco parentis relationship between a stepparent and stepchild, thereby preventing the stepparent from litigating issues of custody or parenting time in a divorce.

To examine this issue, we first review the common-law principles that govern in loco parentis relationships in Nebraska. We next review our cases recognizing and applying parental preference principles in custody disputes between parents and nonparents. Then, we review our cases applying both these principles in the context of a stepparent who seeks custody and parenting time with a stepchild in a divorce proceeding.

---

[25] *Mann, supra* note 23.

[26] See, *Quesinberry v. Quesinberry*, 2021 Ohio 4680, 185 N.E.3d 1136 (2021) (dissolution of marriage presents single claim for relief); *Cochran v. Chapman*, 21 So. 3d 1244 (Ala. Civ. App. 2008) (same); *In re Marriage of Leopando*, 96 Ill. 2d 114, 449 N.E.2d 137, 70 Ill. Dec. 263 (1983) (petition for dissolution of marriage presents multiple issues but single claim for relief). Accord Neb. Rev. Stat. § 42-351 (Reissue 2016) (listing various issues in divorce proceedings over which court has jurisdiction).

And finally, we analyze whether the district court plainly erred in concluding that a natural parent has the absolute right to unilaterally terminate an established in loco parentis relationship between a stepparent and his or her child.

### (a) In Loco Parentis Doctrine

#### (i) Common-Law Principles

[12,13] The common-law doctrine of in loco parentis has long been recognized in Nebraska,[27] and our cases generally define the contours of the doctrine "in keeping with" English common law.[28] In that regard, Nebraska defines a person standing in loco parentis as "one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption."[29] Whether one has assumed the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship.[30]

[14] As the common-law definition of in loco parentis suggests, the primary consideration in the analysis is whether

---

[27] See, e.g., *Austin v. Austin*, 147 Neb. 109, 22 N.W.2d 560 (1946)(superseded by statute on other grounds as stated in *In re Estate of McFayden*, 235 Neb. 214, 454 N.W.2d 676 (1990); applying common-law doctrine of in loco parentis to grandparents); *McNish v. State*, 74 Neb. 261, 104 N.W. 186 (1905) (finding foster parent with whom minor child lived stood in loco parentis); *Clasen v. Pruhs*, 69 Neb. 278, 95 N.W. 640 (1903) (recognizing aunt with whom minor child resided stood in loco parentis).

[28] *Austin, supra* note 27, 147 Neb. at 113, 22 N.W.2d at 563 (citing "Powys v. Mansfield, 14 Eng. Ch., 3 Mylne & Craig 359" for "'proper definition'" of in loco parentis). See, also, Neb. Rev. Stat. § 49-101 (Reissue 2021) (adopting "common law of England" as Nebraska law to extent not inconsistent with U.S. Constitution or any law passed by Legislature).

[29] *Carroll v. Gould*, 308 Neb. 12, 26, 952 N.W.2d 1, 11 (2020). Accord *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000); *Austin, supra* note 27.

[30] *Carroll, supra* note 29.

the person seeking in loco parentis status has assumed the obligations incident to a parental relationship.[31] These obligations include providing support for the child and providing day-to-day care for the child.[32] When considering the scope of obligations incident to a parental relationship, we have also found guidance in the Parenting Act's[33] definition of "parenting functions."[34] In that regard, the Legislature currently defines "parenting functions" to mean "those aspects of the relationship in which a parent *or person in the parenting role* makes fundamental decisions and performs fundamental functions necessary for the care and development of a child."[35]

[15,16] We have often described the doctrine of in loco parentis as "a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural or adoptive parent when the evidence shows the nonparent's exercise of such rights is in the child's best interests."[36] But our cases have also recognized that "in loco parentis status is not equivalent to

---

[31] See *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011), *disapproved on other grounds, Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016).

[32] *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), *disapproved on other grounds, In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[33] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2022).

[34] See *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000) (noting Parenting Act's definitions provide guidance regarding parental rights and duties considered important by Legislature), *disapproved on other grounds, Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). Accord *Peister v. Eurek*, 30 Neb. App. 366, 375, 969 N.W.2d 134, 140 (2021) (noting Parenting Act "offers guidance as to the obligations that the Legislature has deemed important to the parental relationship").

[35] § 43-2922(17) (emphasis supplied).

[36] *Windham v. Kroll*, 307 Neb. 947, 955, 951 N.W.2d 744, 750 (2020). Accord, *State on behalf of Tina K. v. Adam B.*, 307 Neb. 1, 948 N.W.2d 182 (2020); *Jennifer T., supra* note 21; *Whilde, supra* note 21; *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

status as a parent and does not entitle a person to all the same rights that a legal parent would enjoy."[37]

### (ii) Temporary Nature of
### In Loco Parentis

[17-19] Unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated.[38] Therefore, under our precedent, in loco parentis is not a permanent status.[39] Under the common law, the in loco parentis relationship may be abrogated at will either by the party standing in loco parentis or by the child.[40] We acknowledged this common-law rule in *Hickenbottom*,[41] and our cases addressing the in loco parentis doctrine give effect to this rule by recognizing that once a person stops assuming the obligations incident to

---

[37] *Whilde, supra* note 21, 298 Neb. at 486, 904 N.W.2d at 704. Accord *Windham v. Kroll, supra* note 36.

[38] *Windham v. Griffin, supra* note 31.

[39] *Whilde, supra* note 21. Accord *Jennifer T., supra* note 21 (holding litigant cannot seek declaration of permanent in loco parentis status).

[40] See, *Harmon v. Dept. of Soc. & Health Serv.*, 134 Wash. 2d 523, 535, 951 P.2d 770, 775 (1998) ("[a]t common law the status of one standing in loco parentis is voluntary and temporary and may be abrogated at will by either the person standing in loco parentis or by the child"); *In re Marriage of Farrell*, 67 Wash. App. 361, 835 P.2d 267 (1992) (recognizing common-law rule that in loco parentis relationship may be abrogated by either participant and holding 17-year-old child abrogated relationship by moving out of stepfather's home); *Chestnut v. Chestnut*, 247 S.C. 332, 334, 147 S.E.2d 269, 270 (1966) (in loco parentis status "is temporary, and may be abrogated at will by either the person thus standing in loco parentis or by the child") (internal quotation marks omitted); *State ex rel. Gilman v. Bacon*, 249 Iowa 1233, 91 N.W.2d 395 (1958) (same). See, also, 28 Am. Jur. Proof of Facts 2d 545 *Loco Parentis Status* § 8 at 559 (1981) (recognizing that unlike natural parents, one who stands in loco parentis "may terminate and abandon the burdens attendant on such status at any time since the status . . . is temporary and susceptible of abrogation at will by either the person thus standing or by the child").

[41] *Hickenbottom, supra* note 1.

the parental relationship, the person no longer stands in loco parentis.[42] And "'[t]ermination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.'"[43]

### (b) Parental Preference Principles

[20,21] In *Troxel v. Granville*,[44] a plurality of the U.S. Supreme Court held "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." In connection with this fundamental right, *Troxel* recognized a legal "presumption that fit parents act in the best interests of their children"[45] and explained that when a fit parent's decision regarding custody is "subject to judicial review, the court must accord at least some special weight to the parent's own determination."[46]

[22,23] Even before *Troxel*, Nebraska recognized and applied similar parental preference principles.[47] Sometimes calling it the "parental preference doctrine," we have described the principles this way:

---

[42] See *Whilde, supra* note 21. See, also, *Hamilton, supra* note 29; *Quintela v. Quintela*, 4 Neb. App. 396, 544 N.W.2d 111 (1996).

[43] *Whilde, supra* note 21, 298 Neb. at 487, 904 N.W.2d at 704.

[44] *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Accord *State on behalf of Tina K., supra* note 36.

[45] *Troxel, supra* note 44, 530 U.S. at 68.

[46] *Id.*, 530 U.S. at 70.

[47] See, *Stuhr v. Stuhr*, 240 Neb. 239, 246, 481 N.W.2d 212, 217 (1992) (Nebraska follows "parental preference principle[s]" under which courts "may not, in derogation of the superior right of a biological or adoptive parent, grant child custody to one who is not a biological or adoptive parent" unless biological or adoptive parent is unfit or has lost parental rights); *Nielsen v. Nielsen*, 207 Neb. 141, 149, 296 N.W.2d 483, 488 (1980) (fit natural parents have superior right to custody of minor child and such right may not "lightly . . . be set aside in favor of more distant relatives or unrelated parties").

[B]ecause natural and adoptive parents have a fundamental right to make decisions concerning the care, custody, and control of their minor children which is constitutionally protected, custody disputes between a natural or adoptive parent and a nonparent are governed by the parental preference doctrine. That doctrine establishes a rebuttable presumption that the best interests of a minor child are served by placing custody of the child with his or her parent and, absent proof that a parent is unfit or has forfeited the right to custody, a parent may not ordinarily be deprived of the custody of a minor child. In prior cases, we suggested it may be possible to overcome the parental preference doctrine by showing "the best interests of the child lie elsewhere," but we described such circumstances as "exceptional." [More recently,] we explained that in order for such exceptional circumstances to negate the parental preference doctrine, there must be proof of serious physical or psychological harm to the child or a substantial likelihood of such harm. [48]

[24] Nebraska has long applied parental preference principles in custody disputes between a natural or adoptive parent and one who stands in loco parentis. [49] In doing so, we have recognized:

[I]n loco parentis status does not, by itself, eclipse the superior nature of the parental preference accorded to biological or adoptive parentage. Rather, in the face of a natural parent's objection, in loco parentis gives standing to litigate whether the child's best interests are served by maintaining the in loco parentis relationship. [50]

---

[48] *Windham v. Kroll, supra* note 36, 307 Neb. at 958, 951 N.W.2d at 752.

[49] See, e.g., *Windham v. Kroll, supra* note 36; *State on behalf of Tina* K*., supra* note 36; *Windham v. Griffin, supra* note 31; *Stuhr, supra* note 47; *State on behalf of Combs v. O'Neal*, 11 Neb. App. 890, 662 N.W.2d 231 (2003).

[50] *Jennifer T., supra* note 21, 298 Neb. at 807, 906 N.W.2d at 57.

### (c) Stepparents Who Stand
### In Loco Parentis

Nebraska appellate courts have applied the doctrine of in loco parentis to grandparents,[51] stepparents,[52] relatives,[53] third-parties,[54] guardians,[55] and unmarried partners.[56] Because this appeal involves application of the in loco parentis doctrine in the context of a stepparent pursuing custody and visitation with a stepchild in a dissolution proceeding, we focus on that precedent specifically.

More than 30 years ago, in *Hickenbottom*,[57] we applied the doctrine of in loco parentis to a stepparent who sought court-ordered visitation with his stepdaughter when divorcing the child's biological mother. The district court found the stepfather had established an in loco parentis relationship with the stepchild during the marriage, and the court further found it was in the child's best interests to have visitation with the stepfather. The court entered a decree granting the stepfather reasonable visitation with the stepdaughter, and on appeal, the mother argued the visitation award was an abuse of discretion.

[25] The majority opinion in *Hickenbottom* observed the general rule that "a husband who divorces the mother of [his stepchild] is no longer the child's stepfather," and it framed

---

[51] See, e.g., *State on behalf of Daphnie F. v. Christina C.,* 310 Neb. 638, 967 N.W.2d 690 (2021); *Carroll, supra* note 29; *Austin, supra* note 27.

[52] *Hickenbottom, supra* note 1. See, also, *Stuhr, supra* note 47; *Cavanaugh, supra* note 20.

[53] See, *Windham v. Griffin, supra* note 31; *Martins v. School District*, 101 Neb. 258, 162 N.W. 631 (1917); *McNish, supra* note 27.

[54] See *State on behalf of Tina K., supra* note 36.

[55] See, *State, ex rel. Bize, v. Young*, 121 Neb. 619, 237 N.W. 677 (1931); *Wirsig v. Scott*, 79 Neb. 322, 112 N.W. 655 (1907).

[56] See, e.g., *Windham v. Kroll, supra* note 36; *Jennifer T., supra* note 21; *Latham, supra* note 31.

[57] *Hickenbottom, supra* note 1.

the threshold issue on appeal as "whether the district court had jurisdiction to grant the husband, as the ex-stepparent, the right to visit his former stepdaughter."[58] After reviewing the reasoning of other courts that had allowed stepparent visitation under a variety of theories, including in loco parentis, the majority opinion noted that in proceedings under Nebraska's divorce statutes, the court has "'jurisdiction to inquire into such matters, make such investigations, and render such judgments and make such orders, both temporary and final, as are appropriate concerning the status of the marriage, [and] the custody and support of minor children . . . .'"[59] *Hickenbottom* described this statute as giving dissolution courts "'complete jurisdiction over the custody, support, and welfare of all minor children who are touched upon by the divorce proceedings and all related issues.'"[60]

[26] Ultimately, *Hickenbottom* held that in a divorce proceeding, the court has jurisdiction to allow stepparent visitation when the stepparent proves that an in loco parentis relationship was established with the stepchild during the marriage and visitation is in the child's best interests. *Hickenbottom* articulated two reasons for requiring a threshold showing of an in loco parentis relationship: (1) The existence and nature of the relationship is relevant to determining what sort of parenting arrangement would be in the child's best interests,[61] and (2) requiring a stepparent to establish the existence of

---

[58] *Id*. at 582-83, 477 N.W.2d at 11-12.

[59] *Id*. at 598, 477 N.W.2d at 15 (quoting § 42-351 (Reissue 1988)).

[60] *Id*. at 590, 477 N.W.2d at 15. Accord *State ex rel Storz v. Storz*, 235 Neb. 368, 455 N.W.2d 182 (1990) (holding district court where dissolution is properly filed has full and complete general jurisdiction over entire marital relationship and all related matters).

[61] *Hickenbottom, supra* note 1, 239 Neb. at 592, 477 N.W.2d at 16-17 ("[a]lthough the in loco parentis status is not specifically enumerated as a requirement in [Neb. Rev. Stat.] § 42-364 [(Reissue 1988)], it is certainly a relevant inquiry in considering the relationship of the children to each parent").

an in loco parentis relationship as a precondition to litigating issues of visitation would ensure that "the door to visitation rights is not open to one merely because he or she has the legal title of stepparent."[62]

The *Hickenbottom* majority conducted a de novo review and found the stepfather had established an in loco parentis relationship with his former stepdaughter during the marriage. It then considered the mother's reasons for opposing the step-father's visitation postdivorce and found they had nothing to do with the child's best interests; instead, the mother's opposition was motivated by a desire to "punish[] the husband by denying him access to her daughter."[63] The majority opinion concluded that in those circumstances, there was no abuse of discretion in awarding stepparent visitation over the objection of the mother.

Two justices concurred in part and in part dissented in *Hickenbottom.* These justices agreed with the majority that a stepparent who established an in loco parentis relationship with a stepchild while married to the child's natural parent may be granted visitation in a dissolution when it is in the child's best interests. But they thought the cause should be remanded for further proceedings to determine whether (1) the stepchild desired to continue the in loco parentis relationship, (2) the stepfather should be required to pay child support for the stepdaughter, and (3) the stepchild's biological father should be given notice and an opportunity to be joined as a party to the dissolution.[64]

One year after *Hickenbottom*, we decided *Stuhr v. Stuhr*[65] and explained how the parental preference doctrine applies in a custody dispute between a natural parent and a stepparent

---

[62] *Hickenbottom, supra* note 1, 239 Neb. at 592, 477 N.W.2d at 17.

[63] *Id*. at 593, 477 N.W.2d at 17.

[64] *Hickenbottom, supra* note 1 (Fahrnbruch, J., concurring in part, and in part dissenting; White, J., joins).

[65] *Stuhr, supra* note 47.

who established an in loco parentis relationship with a step-child during the marriage. In *Stuhr*, a stipulated divorce decree gave the stepfather custody of his stepson subject to the natural mother's reasonable visitation. Two years later, the mother moved to modify custody, alleging there had been a material change in circumstances because she had completed drug and alcohol treatment, had remarried, and could provide a safe and stable home for the minor child. After an evidentiary hearing, the court found both parties were fit and suitable parents. But reasoning that the stepfather had provided the only stable home the child had ever known, the court concluded that despite a material change in the mother's circumstances, it was not in the child's best interests to change his primary custody.

The mother appealed, arguing the court failed to properly consider her superior right to custody under the parental preference doctrine. We agreed. Our opinion in *Stuhr* acknowledged the constitutionally protected nature of the parent-child relationship and explained that under the parental preference doctrine

> a court may not, in derogation of the superior right of a biological or adoptive parent, grant child custody to one who is not a biological or adoptive parent unless the biological or adoptive parent is unfit to have child custody or has legally lost the parental superior right in a child.[66]

After reviewing the record de novo, we agreed with the district court that both the mother and stepfather were fit and proper persons to have custody, but we held the district court had abused its discretion by failing to adequately consider the fit natural mother's superior right to custody under parental preference principles. Because the evidence showed the mother was fit and had not forfeited her parental rights, we reversed the district court's judgment and modified the decree to give the mother primary custody of her son, subject to the stepfather's reasonable rights of visitation.

---

[66] *Id.*, 240 Neb. at 246, 481 N.W.2d at 217.

#### (d) District Court Plainly Erred
#### in Applying Precedent

[27] After *Hickenbottom* and *Stuhr*, Nebraska appellate courts generally recognize that it is a stepparent's "desire to remain in an in loco parentis relationship with his [or her spouse's] child that gives rise to the rights and corresponding responsibilities usually reserved for natural or adoptive parents."[67] Here, it is undisputed that Noland desired to remain in an in loco parentis relationship with A.B. after the divorce, and his complaint for dissolution expressly sought custody and parenting time with A.B. based on that relationship. After the evidentiary hearing, the district court expressly found that Noland had established an in loco parentis relationship with A.B. during the marriage. Under *Hickenbottom*, this threshold showing entitled Noland to litigate issues of custody and parenting time in the divorce, although the showing alone does not guarantee success on the merits of those issues.

But the court did not proceed to consider whether A.B. wanted to continue the in loco parentis relationship or whether doing so was in A.B.'s best interests. Nor did the court postpone consideration of those issues until all other issues were tried and submitted. Instead, the court concluded that Noland had no right to litigate issues of custody or visitation in the divorce, because his in loco parentis status had been effectively terminated by Yost's unilateral decision to cut off all contact between A.B. and Noland when the divorce proceedings were commenced. More specifically, the district court concluded as a matter of law that Nebraska's parental preference doctrine allows natural parents to unilaterally terminate an established in loco parentis relationship involving their minor child and that courts are "without power to infringe"

---

[67] *In re Interest of Sarah H.*, 21 Neb. App. 441, 452, 838 N.W.2d 389, 398 (2013). Accord, 67A C.J.S. *Parent and Child* § 361 at 484-85 (2023) ("[t]he status of loco parentis for a stepparent generally terminates upon divorce, . . . unless the party standing in loco parentis to the child means that it should continue").

on that decision. This amounted to plain error for at least two reasons.

[28] First, under Nebraska law, parental preference principles do not insulate parental decisions from judicial review. In *Hamit v. Hamit*,[68] we discussed the rebuttable nature of the presumption that fit parents act in their child's best interests. We cited with approval the proposition that even though *Troxel* requires courts to accord at least some special weight to a fit parent's decision, "'the "special weight" requirement does not insulate parental wishes from judicial review.'"[69] Not only did the district court here have the authority to review Yost's decision to stop all contact between A.B. and Noland, but *Hickenbottom* teaches that the reasons for Yost's decision should be considered when evaluating whether it is in the child's best interests to continue the in loco parentis relationship.[70]

Second, nothing in our jurisprudence suggests that fit natural parents have an absolute right to unilaterally terminate, at will, an established in loco parentis relationship between their minor child and a stepparent. Nebraska has long adhered to the common-law doctrine of in loco parentis, including the rule that an in loco parentis relationship can be terminated at will by either the party standing in loco parentis or the child.[71]

---

[68] *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006).

[69] *Id*. at 671, 715 N.W.2d at 523 (quoting *In re R.A., Jr.*, 121 P.3d 295 (Colo. App. 2005)).

[70] See *Hickenbottom, supra* note 1 (considering reasons for natural mother's objection to stepparent visitation when determining whether continuing in loco parentis relationship with stepfather postdivorce was in child's best interests). Accord, *Whilde, supra* note 21, 298 Neb. at 487, 904 N.W.2d at 705 (noting Texas order established in loco parentis-like relationship between mother's natural child and mother's former partner and issue of whether such relationship "still existed was relevant . . . to the court's consideration of whether or not it was in the child's best interests for [former partner] to continue to have rights of custody and visitation").

[71] See cases cited *supra* note 44.

As we recently recognized, our cases "have never held that in loco parentis status can be involuntarily extinguished from one day to the next, let alone from one hour to the next."[72] Instead, our cases illustrate that when an in loco parentis relationship has been established, one who stands in loco parentis should be allowed to litigate whether it is in the child's best interests to continue that relationship, even over the natural parent's objection.[73]

[29,30] In that regard, we have quoted with approval the proposition that "'a biological parent's rights do not extend to erasing [an in loco parentis] relationship between her partner and her child which she voluntarily created and actively fostered simply because after the parties' separation she regretted having done so.'"[74] And we have explained:

"[W]hile it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, . . . the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objection."[75]

[31] Parental preference principles must be carefully considered by courts when determining custody disputes between

---

[72] *Carroll, supra* note 29, 308 Neb. at 25, 952 N.W.2d at 10.

[73] See, e.g., *id.*; *Windham v. Griffin, supra* note 31; *Latham, supra* note 31; *Hickenbottom, supra* note 1.

[74] *Latham, supra* note 31, 282 Neb. at 134, 802 N.W.2d at 76 (quoting *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913 (2001)).

[75] *Id.* at 130, 802 N.W.2d at 74 (quoting *J.A.L. v. E.P.H.*, 453 Pa. Super. 78, 682 A.2d 1314 (1996)).

a natural or adoptive parent and one who stands in loco parentis,[76] but these principles do not give natural parents an absolute right to terminate, at will, an established in loco parentis relationship involving their minor child.[77] The district court's conclusion that Yost had an absolute right to unilaterally terminate the established in loco parentis relationship between A.B. and Noland is thus contrary to Nebraska's settled precedent. Because this misapplication of law resulted in Noland being barred from litigating custody and visitation issues, it amounted to plain error, and leaving it uncorrected would damage the integrity and fairness of the judicial process.[78]

For the sake of completeness, we acknowledge that a few courts in other states have issued opinions allowing natural parents to unilaterally terminate established in loco parentis relationships at will.[79] The district court here did not expressly cite to such cases, but to the extent it may have relied upon

---

[76] See, e.g., *Windham v. Kroll, supra* note 36; *State on behalf of Tina* K*., supra* note 36; *Windham v. Griffin, supra* note 31; *Stuhr, supra* note 47; *State on behalf of Combs, supra* note 49.

[77] Accord *Latham, supra* note 31.

[78] See, *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011) (court committed plain error by failing to give proper legal effect to paternity acknowledgment); *Deterding v. Deterding*, 18 Neb. App. 922, 797 N.W.2d 33 (2011) (dissolution court committed plain error by failing to determine whether husband should be ordered to pay child support for wife's natural child conceived through artificial insemination during marriage, under theory of in loco parentis).

[79] See, e.g., *Foust v. Montez-Torres*, 2015 Ark. 66, at 5, 456 S.W.2d 736, 739 (2015) (reasoning that natural parents must be permitted to terminate in loco parentis relationship at will "lest the law improperly prioritize the rights of the nonparent above that of the natural parent"); *Jones v. Barlow*, 154 P.3d 808, 814 (Utah 2007) (reasoning that if natural parents are not allowed to terminate in loco parentis relationships at will, those standing in loco parentis can "extend [their] parent-like rights against the legal parent's objections for as long as [they see] fit"). But see *McCrillis v. Hicks*, 2017 Ark. App. 221, 518 S.W.3d 734 (2017) (limiting rule announced in *Foust* and holding there are still circumstances under which natural parents cannot unilaterally terminate in loco parentis relationship).

similar reasoning, it is inconsistent with Nebraska's in loco parentis jurisprudence.

## V. CONCLUSION

The district court plainly erred in concluding that the parental preference doctrine gave Yost an unfettered right to unilaterally terminate the in loco parentis relationship between A.B. and Noland. We therefore reverse that portion of the March 2022 order and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.