IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MILLER V. MILLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMEE J. MILLER, APPELLEE,

V.

GEOFFREY W. MILLER, APPELLANT.

Filed July 29, 2025.    No. A-24-887.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Geoffrey W. Miller, pro se.

Lisa D. Rittenhouse for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Geoffrey W. Miller appeals from the order of the district court for Box Butte County, which dissolved his marriage to Jamee J. Miller. On appeal, he only challenges the court's denial of his request for parenting time with his stepchild. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Geoffrey and Jamee were married in September 2021. They have one biological child, Jayden Miller, who was 4 years old at the time of trial. Jamee has two other children. The youngest of these, Elliott Fry, was 8 years old at the time of trial. The parties separated in March or April 2023, and Jamee filed for divorce in May. The record does not include her complaint for dissolution of marriage or any responsive pleadings filed by Geoffrey, but Geoffrey's trial

- 1 -

testimony indicates that he "initially sue[d] for sole custody of both boys" and that he sought "50/50 parenting time" with them.

The parties entered into a stipulation establishing temporary custody and parenting time with respect to Jayden. On July 3, 2023, the district court entered an order finding that the stipulation was fair and reasonable, and in Jayden's best interests. The parties were awarded temporary joint legal and physical custody of Jayden with alternating weeks of temporary parenting time, and parenting time exchanges occurring on Sundays at 6 p.m. The parties also entered into a stipulation, allowing Geoffrey temporary stepparent visitation with Elliott. The stipulation included a provision that Geoffrey cannot take Elliott out-of-state without Jamee's written permission. On July 25, the court entered an order approving that stipulation and finding that Geoffrey was to have temporary visitation with Elliott from 6 p.m. Friday until 6 p.m. Sunday on the weekends when he had "regular parenting time" with Jayden. The court noted that the temporary order with respect to Elliott did not grant or imply that Geoffrey "has those rights conferred by Nebraska law upon any natural parent of Elliott."

A dissolution trial was held on September 23, 2024. Both parties testified, and the district court received various documentary exhibits. We summarize only the evidence relating to Geoffrey's request for parenting time with Elliott.

Initially, both Jayden and Elliott stayed with Geoffrey after the parties separated. Jamee testified that she was allowed to see the boys freely "[a]t the very, very beginning," but that eventually "[Geoffrey] turned it to where it became harder for [her] to gain access to [them]." According to Jamee, she was "led to believe" that she would not be allowed parenting time with either boy. At some point, she took Elliott to reside with her, after which Geoffrey "denied [her] any access" to Jayden. Jamee testified that to get Elliott back, she "had to go to the school physically and grab him after school." Eventually, the parties agreed to temporary parenting plans for both boys, which Jamee felt was "the fastest way to restore contact with Jayden." She testified that the temporary plan for Elliott included a "boundary" regarding out-of-state visitation because Geoffrey lives "very close to borders" and has family in Colorado. She testified to her concern that Geoffrey would take Elliott out of state and not return him. Jamee testified that she felt pressured to allow Geoffrey temporary parenting time with Elliott "[b]ecause otherwise [she] would not . . . have been able to see . . . Jayden." She also noted "some threats of adopting against [her] will" and testified to her concerns about what Geoffrey might say to the court and whether he would testify truthfully.

The district court received text messages between the parties into evidence, in which the parties discussed what they would agree to in terms of temporary parenting time between Geoffrey and Elliott and whether Jamee would agree to Geoffrey adopting Elliott. The text messages reflect that Jamee was against adoption, and she affirmed at trial that she did not want Geoffrey to adopt Elliott. In other text messages, Jamee referred to Elliott as Geoffrey's "son," Geoffrey as Elliott's "dad," and stated that Elliott viewed Geoffrey as "his father." Jamee explained that she made such references at the beginning of the parties' separation because she felt "pressured to go along" with Geoffrey's desire to be seen as Elliott's father and felt that she was "keeping the peace" by doing so. Jamee also indicated that Geoffrey "can be a very intimidating person."

Jamee was asked about Geoffrey's relationship with Elliott during the marriage and testified that she did not believe Geoffrey "stood in place of a parent for Elliott." She denied that

- 2 -

Geoffrey ever performed any of the day-to-day parenting routines for Elliott. Jamee testified that she was responsible for taking the children to dental and medical appointments, that she took them to school every day, that Geoffrey "[v]ery, very rarely" attended school events, and that he did not attend parent/teacher conferences. Both parties provided financial support for the children; Jamee was employed full time during the marriage, except for a 2-month period between jobs. Geoffrey's work involved a lot of travel during the marriage. Jamee testified that Geoffrey was "home maybe one weekend a month," that there were "several little stretches" where he was home for about 3 months "like during COVID, for example," and that he would be home about 2 or 3 weeks "like for a holiday."

According to Jamee, she did not want the court to order continued parenting time between Geoffrey and Elliott because "Elliott is [her] child and [Geoffrey] is just a stepparent." She did not believe that Geoffrey would respect her "boundaries and role as parent" if the court ordered continued parenting time. Jamee testified that Elliott does not call Geoffrey "dad or father" when he is with her, but that she would not stop him from doing so if he did. She testified further that if the court did not order continued parenting time, she would still allow occasional visits between Geoffrey and Elliott and would allow Elliott to visit Geoffrey if Elliott asked to do so. When asked why she would allow any continued parenting time if Geoffrey was not a person standing in loco parentis to Elliott, she testified that "it's going to be hard on Elliott" and that while she would not "completely strip that right away from [Elliott]," she would "like to ease him from it." She testified further that Elliott has "ADHD" and is "a very emotional child," so "things do get to him a little bit."

Geoffrey testified that he has acted as a parent to Elliott. He indicated that Elliott first began living with him in approximately April 2018 when Elliott was 2 years old, and that to his knowledge, Elliott has never lived with his natural father. Geoffrey affirmed that prior to the parties' separation, he performed parenting tasks, including feeding Elliott, making sure he got baths or showers, making sure he wore appropriate clothing, giving him medicine, taking him to school, and helping him with school, among other things. According to Geoffrey, he comforted Elliott when he was sad; calmed him when he was mad; built him a playset with a slide and swings; and did "fun" things with him, including fishing, camping, playing ball and video games, coloring, and playing with "the dogs." Geoffrey insisted that despite his work schedule that required him to travel, "most of the time" he took Elliott to doctor's appointments and attended parent/teacher conferences. Geoffrey testified that he maintained a strong relationship with both Jayden and Elliott during the marriage even though he traveled for work, testifying that they "FaceTimed every night."

Geoffrey testified that under the temporary parenting time arrangement, he continued to take care of Elliott in the same way he cared for him prior to the parties' separation. Geoffrey's work schedule at the time of trial was "not as rigid as it was before." He was working about 40 hours per week and affirmed that when he is not working, he is spending time with the boys. Since the separation, Geoffrey has told Elliott that he will always love him and that he will continue to be Elliott's "dad" for as long as Elliott wants him to be. According to Geoffrey, since they had this conversation, Elliott has been "a lot more loving; calls [Geoffrey] dad a lot more; tells [Geoffrey] he loves [him] a lot more." Geoffrey testified that Elliott has expressed disappointment in not being able to spend as much time with Geoffrey as Jayden has under the parties' temporary parenting

plan for Jayden. Geoffrey asked the district court to allow him to continue exercising parenting time with Elliott, at least every other weekend, indicating that he would "love" to have more parenting time. Geoffrey also requested holiday parenting time with Elliott. Geoffrey testified that he would make sure Elliott attended "all of his schooling" and any activities during Geoffrey's parenting time. Geoffrey was asked about Elliott's relationship with Geoffrey's extended family, and Geoffrey indicated that Elliott viewed them as his own family, calling them "[c]ousins, aunts, and uncles."

Geoffrey disputed Jamee's assertion that she agreed to temporary stepparent visitation between him and Elliott because she was worried about receiving parenting time with Jayden, testifying that she "already had joint custody" of Jayden by court order. He denied intimidating Jamee before or at the time of the text messages in evidence. Geoffrey denied saying or doing anything to indicate to Jamee that he would not return Elliott from any visits to Geoffrey's family in Colorado and affirmed that he would return Elliott to Nebraska if allowed to take him on any holiday visits. Geoffrey agreed that he wanted to adopt Elliott and that he and Jamee had talked about adoption, but he denied suggesting that he could adopt Elliott "against her will." He admitted, however, suggesting that Jamee "not tell the [c]ourt about the divorce or withhold the divorce so that [he] could adopt Elliott." He agreed that it might have been intimidating when he "sue[d] for sole custody of both boys," but he denied that that had been his purpose. He testified that he had sought sole custody, "Because I want my boys," and he thought either sole custody with him or 50/50 parenting time would be best for them.

On October 31, 2024, the district court entered a decree, dissolving the parties' marriage and dividing the marital estate. After finding that "[o]ne child [Jayden] is affected by these proceedings," the court awarded the parties joint legal and physical custody of Jayden, and it made other findings concerning Jayden not relevant to this appeal. The court found the evidence insufficient to show that Geoffrey was standing in loco parentis to Elliott, noting that the parties gave differing testimony regarding Geoffrey's relationship with Elliott. The court stated that it had "no reason to believe one party over the other with respect to that relationship." Because the evidence was "evenly balanced," the court found that Geoffrey had failed to carry his burden of proof. Accordingly, the court denied Geoffrey's request for court-ordered visitation with Elliott, stating that the issue of any such visitation "must be left to the parties."

## ASSIGNMENTS OF ERROR

Geoffrey assigns that the district court erred in (1) finding that only one child was affected by the dissolution proceedings and (2) denying his request for parenting time with Elliott.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's

determination will normally be affirmed absent an abuse of discretion. See *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021).

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Backhaus v. Backhaus, supra.*

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

The district court denied Geoffrey's request for court-ordered parenting time with his stepchild, Elliott, finding that Geoffrey failed to meet his burden of showing his in loco parentis status with respect to Elliott. Geoffrey assigns error to the court's denial of his request. He also challenges the court's statement that only one child was affected by these proceedings. We read the court's statement about only one child being affected by the proceedings as simply referring to Jayden's status as the parties' only biological child. The court clearly considered Geoffrey's relationship with Elliott and whether the evidence supported a finding that he had established an in loco parentis status relationship with respect to Elliott. We proceed to address Geoffrey's assignment of error concerning the court's denial of his request for parenting time below.

When a stepparent divorces a child's biological or adoptive parent, he or she is no longer that child's stepparent. *Noland v. Yost*, 315 Neb. 568, 998 N.W.2d 57 (2023). In a divorce proceeding, the court has jurisdiction to allow stepparent visitation when the stepparent proves that an in loco parentis relationship was established with a stepchild during the marriage and visitation is in the child's best interests. *Id.*

A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption. *Id.* The assumption of the relationship of in loco parentis is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship. *Id.* The primary consideration in an in loco parentis analysis is whether the person seeking in loco parentis status assumed the obligations incident to a parental relationship. *Id.* These obligations include providing support for the child and providing day-to-day care for the child. *Id.*

The parties presented differing pictures of Geoffrey's parental relationship with Elliott. According to Jamee, Geoffrey had very little involvement in parenting Elliott, while Geoffrey testified that he was involved in many aspects of Elliott's day-to-day care. Upon our de novo review, we agree that the evidence was conflicting with respect to Geoffrey's assumption of parental obligations with respect to Elliott, and we defer to the court's determination that the evidence was evenly balanced. The court did not abuse its discretion in finding that Geoffrey failed to meet his burden of proof and denying his request for court-ordered parenting time with Elliott. See *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025) (unless exception applies, burden of proof in civil cases requires only greater weight of evidence; greater weight of evidence means evidence sufficient to make claim more likely true than not true). See, also, NJI2d Civ. 2.12A (if evidence upon claim is evenly balanced, or if it weighs in favor of other party, then burden of proof

has not been met). While we cannot say that the district court abused its discretion in its decision to not formalize stepparent visitation, we acknowledge the evidence presented by Geoffrey showed his love for Elliott and that they have had a good relationship.

CONCLUSION

The district court did not abuse its discretion in denying Geoffrey's request for parenting time with his stepson. Geoffrey does not challenge any other provisions of the decree. Accordingly, we affirm the decree in its entirety.

AFFIRMED.